## SHOTKIN v. MUTUAL BENEFIT HEALTH & ACCIDENT ASS'N.

### No. 39.

Circuit Court of Appeals, Second Circuit.

Oct. 26, 1943.

Abbott L. Levine, of New York City, for plaintiff-appellant.

Albert Hirst, of New York City, for defendant-appellee.

Before L. HAND, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

Plaintiff sued defendant in the Supreme Court of New York for $250,000 damages for breach of a contract of employment. Defendant, a Nebraska insurance corporation authorized to do business in the State of New York, removed the action to the District Court of the United States because of the diverse citizenship of the parties, and then moved for a summary judgment on an answer and affidavit contending that it had discharged plaintiff in accordance with the terms of the employment contract. The court granted the motion and plaintiff appeals.

The employment contract, entered into on January 20, 1940, provided that defendant as "the first party does hereby appoint the second party as Special Representative in the capacity of Agency Supervisor of those agents appointed by himself for the sole purpose of securing applications from insurable risks for health and accident and hospitalization insurance in the Mutual Benefit Health and Accident Association collecting first premiums on policies based upon such applications written within the five boroughs of New York City and Long Island." No period of employment was stated. Among the several detailed provisions of the contract was the following: "This contract shall be void in the event the second party leaves the employment of the Association or fails to comply with any of the provisions herein or if the second party shall deal dishonestly with the Association or violate any of the insurance laws of the state."

From defendant's moving papers, it appears that on or about April 1, 1940, the Insurance Department of the State of New York preferred written charges against plaintiff involving various violations of the Insurance Law and ordered him to show cause on April 15 why any license issued to him should not be revoked or suspended. A hearing was held in due course, and on November 6, 1940, the Superintendent of Insurance rendered a decision that plaintiff had aided certain named individuals in violating § 110 of the New York Insurance Law, Consol.Laws, c. 28, by accepting applications for insurance to be issued by defendant from unlicensed individuals, by paying or allowing them commissions, and by submitting such applications to defendant through his own name as licensed agent. And the Superintendent ordered that plaintiff's license to act as agent for a named insurance company (not defendant) be suspended for four months. Under the provisions of the Insurance Law the Superintendent is given power, after notice and hearing, to suspend or revoke an insurance agent's license; and the law also provides for judicial review of the Superintendent's action. New York Insurance Law §§ 117, 23, 24, 33. Plaintiff did not seek such judicial review of the Superintendent's decision. The court below held that it therefore stood against him "as a binding determination that he not only violated the insurance laws of the State, but dealt dishonestly with the defendant," and also that "the very condition mentioned in the agreement has arisen and put an end to the agreement itself."

In arguing in support of the ruling below, defendant asserts that the Superintendent's decision, unappealed from, is a binding adjudication showing infraction of the law by plaintiff. But unless the contract, reasonably interpreted, so contemplates, we do not see how an adjudication in a proceeding to which the defendant was not a party and which involved a matter of licensing between the State of New York and the plaintiff can settle the contract rights of the parties herein. Defendant points out, however, that defendant itself can operate only upon license of the Superintendent of Insurance issued each year, which may be refused if in the judgment of the Superintendent "such refusal will best promote the interests of the peo-

ple" of the State of New York, Insurance Law § 40, sub. 4, and that it is forbidden to pay any commission or other compensation to an unlicensed person. Insurance Law § 113, sub. 1. Defendant then argues that since, therefore, it could not have as its representative a person forbidden to act as insurance agent by decision of the Superintendent of Insurance, the provision of the contract in question must mean that the action of the Superintendent in revoking or suspending plaintiff's license as agent will itself terminate the contract of employment herein. As a practical matter there is much to be said for such a view of the probable intent of the parties. Even so, that well might leave various issues still in doubt here. For the defendant terminated the contract of employment at the time the charges were made, several months in advance of the decision, and, as appears from the papers, notified the Insurance Department on April 11, 1940, of the termination of plaintiff's appointment to represent it as agent. This explains why the decision of suspension, when rendered the following November, said nothing as to plaintiff's authority to act as agent for defendant and only suspended his license as to another company. Whether a suspension of limited duration to act as agent for another company may be considered without more as legal justification of plaintiff's discharge some seven months earlier for acts which took place before the discharge is, therefore, an interesting question, which may not be entirely free from doubt. We do not find it necessary to pass upon it, however, for the judgment may stand on other grounds.

The affidavit made by plaintiff's counsel in opposition to defendant's motion also asserts the sequence of events as above stated and in effect admits that plaintiff did violate the insurance laws of the State by accepting applications from unlicensed persons, but goes on to make the defense that defendant's general agent in New York did the same thing and, indeed, was suspended, on plaintiff's complaint, at the same time and for the same cause as was plaintiff. The affidavit is further relied on as a basis for the legal argument made to us that plaintiff's violation of law was excused, since it was induced or caused by this agent. The specific assertions, however, are that prior to 1940 the Insurance Department did not require agents selling health, accident, and hospitalization insur-

ance to be licensed and that a new law with respect to licensing these individuals came into effect on January 1, 1940, which required these men to be licensed, but exempted certain individuals selling these policies on the industrial plan. Parenthetically it may be remarked that plaintiff cites no statute to back up these assertions as to the operation of state laws and we have been able to discover none supporting them; in fact they seem contrary to the statutes previously cited, notably Insurance Law §§ 110, 113, sub. 1. The affidavit then continues that plaintiff "was advised by the defendant's agent that the policies to be sold by the defendant would be under the class of industrial policies and that therefore the plaintiff need not engage licensed men," and that he depended "solely upon the general agent regarding the interpretation of the Insurance Law" because he was embarking on a new venture and had no knowledge of the provisions of the Insurance Law. Then follows the significant further statement, made in the light of earlier assertions that plaintiff's duties were principally those of an educational character in teaching agents: "Moreover, in view of the fact that he was considered an educational director, he had reason to believe and justly so that no license would be required for him."

Hence plaintiff, while in effect confessing the charge, shows that defendant's general agent in New York City was also a law violator, and asserts further that he himself had no knowledge of the law and relied upon the agent's interpretation of it, to his sorrow. But we cannot see how these matters can constitute a defense, in view of the explicit terms of the contract. The statements do not rise to the level of an assertion that the agent induced or instructed the plaintiff to violate the law, only that he attempted to give some legal advice in the premises. Even had it been directly asserted that the agent attempted to induce the breach of contract, we do not see any apparent authority, sufficient to make the defendant liable for his act, merely by reason of his agency or even when this was coupled with his own violations of the law. "Authority to do illegal or tortious acts, whether or not criminal, is not readily inferred." Restatement, Agency, 1933, § 34(d) and comment e. True, plaintiff attempts to draw the inference from testimony before the Insurance Department in the case of other violators of

534

the law that the defendant's home office must have known of violations in such cases when acting on applications for insurance received through them. But even if this perhaps extensive inference is accepted, we do not see how these somewhat isolated instances can be accepted as a waiver by defendant of this provision of its contract with plaintiff. We think, therefore, that the effect of plaintiff's violation of this term of the contract is not controverted by his counsel's affidavit and that hence there was no genuine issue as to any material fact which would call for a trial under Federal Rules of Civil Procedure, rule 56(c), 28 U.S.C.A. following section 723c. Bushwick-Decatur Motors v. Ford Motor Co., 2 Cir., 116 F.2d 675.

The judgment is affirmed.