## ENGL v. ÆTNA LIFE INS. CO.

### No. 137.

Circuit Court of Appeals, Second Circuit.

Dec. 3, 1943.

470

Harry G. Herman, of New York City (Jacob A. Bernstein, of Mt. Vernon, N. Y., on the brief), for plaintiff-appellant.

Daniel Miner, of New York City (Allen M. Taylor, of New York City, on the brief), for defendant-appellee.

Before AUGUSTUS N. HAND, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

Defendant's defense to plaintiff's claim as beneficiary of three insurance policies totalling $8,000 upon the life of her deceased husband is based upon the contention that in applying for the insurance the insured had misrepresented the facts as to consultations he had had with physicians. After defendant had filed its answer herein wherein it raised this defense by detailed allegations and showed a tender of premiums paid, it then proceeded to take the depositions of two physicians, who testified that deceased had in fact consulted them, but not as to the reasons for or nature of such consultations, since plaintiff claimed her statutory privilege (New York Civil Practice Act, § 352, applying also in the federal court below, Connecticut Mut. Life Ins. Co. v. Union Trust Co., 112 U.S. 250, 5 S.Ct. 119, 28 L.Ed. 708) that these were confidential communications. Thereafter defendant moved for summary judgment, which the district court granted. Plaintiff's appeal contends that she was not compelled to disclose her case in advance of trial, and specifically that she was not required, before that time, to waive her privilege as to permitting the doctors to testify, and thus could rely until then upon the possibility that the doctors might show the consultations to have been on inconsequential ailments.

The deceased took out the policies, which became incontestable after two years, in November, 1941. He died on April 8, 1942. By their terms the policies made the written statements of the deceased in his application "representations" and within the provisions of New York Insurance Law, Consol. Laws, c. 28, § 149, as amended in 1939, dealing with "Representations by the insured." See Patterson, The Insurance Law Revision of 1939, 11 N.Y.St. Bar Bull. 135. The question and answer here particularly involved are as follows: "10.l. When and for what reason did you last consult a physician?" "Pleurisy (dry) 1921. Brief. Due to exposure only. 1921. Dr. ——? Berlin." Other questions and answers involved are the question whether he had ever consulted a physician for or suffered from any disease of "Stomach, Intestines, Liver, Kidneys or Bladder," with the answer "No," the question, "Have you had regular or occasional health examinations?" with a like answer, and the further questions immediately following, "Date of last?——" and "By Dr.——" with lines.

drawn after them to show negative answers to them.

The depositions of Drs. Schur and Bernstein brought out that the deceased had in fact consulted Dr. Schur on March 26, May 28, and June 20, 1940 (in addition to other visits particularly for his wife), that the doctor had prescribed for him and had referred him to Dr. Bernstein, a radiologist, for X-rays, and that Dr. Bernstein in May, 1940, had taken six X-rays of the insured's gall bladder over a period of three days after he had followed a certain preparatory diet. (That the part of the insured's body X-rayed was in fact the gall bladder was received only under motion to strike, but it would seem admissible under the rule that the statutory privilege does not extend to matters observable by any third person if present. Klein v. Prudential Ins. Co., 221 N.Y. 449, 453, 117 N.E. 942.) All other questions as to the object of the consultation or details thereof, as well as questions as to gall bladder pathology, were left unanswered because of plaintiff's insistence on her privilege, plaintiff's counsel stating that he reserved the right of cross-examination of these witnesses until the trial. Defendant's affidavit on its motion for summary judgment brought these depositions to the attention of the court, and a further affidavit of its associate medical director showed that he had approved the deceased's application for life insurance and that he would not have done so had he known of the fact of these consultations and the taking of the X-ray photographs. Plaintiff, in opposition to the motion, submitted only her own affidavit to the effect that it had been the custom of herself and her husband to submit to annual physical examinations while living in Germany, that after coming to this country in 1938 she had suggested such a check-up here, and that the examinations in question, as well as the taking of the X-rays, were only routine medical check-ups such as she and her husband had had before in Germany.

New York Insurance Law, § 149 provides in its sub. 2 that misrepresentations shall not defeat recovery on the policy unless material and shall be deemed material only if the insurer would not have made the contract except for reliance upon the misrepresentations, and in sub. 4 that a misrepresentation that an applicant has not had previous medical treatment shall be deemed a misrepresentation that the applicant has not had the disease for which such treatment was given, concluding with this pertinent sentence: "If in any action to rescind any such contract or to recover thereon, any such misrepresentation is proved by the insurer, and the insured or any other person having or claiming a right under such contract shall prevent full disclosure and proof of the nature of such medical impairment, such misrepresentation shall be presumed to have been material." The district court, in granting judgment, held that plaintiff had prevented full disclosure, that the presumption therefore operated, and that plaintiff's own affidavit was not enough to explain the visits to and the X-rays of the physicians, citing particularly Anderson v. Aetna Life Ins. Co., 265 N.Y. 376, 380, 193 N.E. 181, 182, where the court had said that cases calling for an X-ray examination "can scarcely be presumed to be mere temporary disorders, having no bearing upon general health." It therefore held the misrepresentations to be material as a matter of law and to avoid the policies.

■ In view of this pertinent New York law there can be no doubt that if the state of the evidence at a trial should be as is above disclosed a judgment for defendant must necessarily follow; and if a jury were present, there would be error in failing to direct a verdict. This in effect plaintiff concedes by basing her argument upon the claim that her case is not to be viewed as it would be at trial. For this she cites and relies on Federal Rule 26(b), 28 U.S. C.A. following section 723c, which provides as to the "scope" of examination before trial that it shall be only as to relevant matter "not privileged." And the steps in her argument are that, since examination before trial of the physicians on these matters could not be compelled, she might therefore wait until trial to determine whether to make use of their testimony. Of course, she, or at least the deceased's "personal representatives," had the undoubted right to waive the privilege. New York Civil Practice Act, § 354, permitting waiver "upon the trial or examination"; Capron v. Douglass, 193 N.Y. 11, 85 N.E. 827, 20 L.R.A.,N.S., 1003; Lorde v. Guardian Life Ins. Co., 252 App.Div. 646, 300 N.Y.S. 721. But it is a complete non sequitur to say that this federal rule has such an extensive application as to control, and, as we believe, largely to nullify, another federal

rule more directly involved, namely, Rule 56, concerning summary judgments.

■ The limitation of Federal Rule 26 (b) of the scope of examination before trial to relevant matter not privileged has a quite different objective from that visualized in the plaintiff's argument. For by the extensive discovery practice of the new rules, examination before trial may be had not merely for the purpose of producing evidence to be used at the trial, but also for discovery of evidence, indeed, for leads as to where evidence may be located. Thus sub. (a) of Rule 26 expressly states that examination may be had "for the purpose of discovery or for use as evidence in the action or for both purposes," and sub. (b), dealing with the "scope of examination," authorizes it as to, among other things, "the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of relevant facts"; while the use of the testimony secured in evidence is governed by an entirely separate provision, sub. (d), setting forth various rules of admissibility. This dual nature of the discovery procedure, one of the most important parts of the new system, has been widely commented upon and its value frequently attested.[1] Subdivision (b), therefore, extends much beyond sub. (d) in allowing examination into matters which may not be admissible in evidence. But to guard against abuse by inquiry into matters protected by law, Woernley v. Electromatic Typewriters, 271 N.Y. 228, 2 N.E.2d 638; Lorde v. Guardian Life Ins. Co., supra, it was obviously necessary to add the quoted language recognizing existing common-law and statutory privileges as to confidential communications.

■ There is nothing in this history, however, to suggest that the respect thus shown to a privileged communication should limit the procedure under a different rule, namely, that for summary judgment under Federal Rule 56. The express language of Rule 56, read in its natural context, is to the contrary, for sub. (c) provides that "the judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that, except as to the amount of damages, there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Here the depositions, taken at their face value, and construed in the light of the underlying law of the state, show that there is no genuine issue of material fact and support the judgment rendered.

■■ But the matter is sufficiently important so that we should go beyond the bare words of the summary-judgment rule to the reasons behind it. The federal summary judgment proceeding is the most extensive of any jurisdiction in that it is equally available to plaintiffs and defendants and in all forms and kinds of civil actions. But the history of the development of this procedure shows that it is intended to permit "a party to pierce the allegations of fact in the pleadings and to obtain relief by summary judgment where facts set forth in detail in affidavits, depositions, and admissions on file show that there are no genuine issues of fact to be tried." 3 Moore's Federal Practice 3175. In New York the question of constitutionality was settled by considering the procedure as one to determine whether a defense or issue formally stated between the parties was merely sham and not bona fide. Formerly this could be determined only on the face of the pleadings; the only essentially new step was to allow such a showing to be made on the basis of detailed affidavits. The rationale is well stated in one of the leading cases establishing constitutionality, Hanna v. Mitchell, 202 App. Div. 504, 518, 196 N.Y.S. 43, 55, affirmed 235 N.Y. 534, 139 N.E. 724; "To say that

---

[1] See Pike and Willis, The New Federal Deposition-Discovery Procedure, 38 Col.L.Rev. 1179, 1187, 1436, 1440–1443; Pike, The New Federal Deposition-Discovery Procedure and the Rules of Evidence, 34 Ill.L.Rev. 1, 3–8; Pike and Willis, Federal Discovery in Operation, 7 U. of Chi. L.Rev. 297, 309–318; Pike, Some Current Trends in the Construction of the Federal Rules, 9 Geo.Wash.L.Rev. 26, 41; Holtzoff, Instruments of Discovery under Federal Rules of Civil Procedure, 41 Mich.L. Rev. 205; Ilsen, Recent Cases and New Developments in Federal Practice and Procedure, 16 St. John's L.Rev. 1, 11; Hincks, J., in Lewis v. United Air Lines Transport Corp., D.C.Conn., 27 F.Supp. 946.

a false denial, which defendants are unable to justify, must nevertheless put the plaintiff to his common-law proof before a jury, although the result would be a directed verdict in plaintiff's favor as a matter of law, is to exalt the shadow above the substance."[2] Hence we have often held that mere formal denials or general allegations which do not show the facts in detail and with precision are insufficient to prevent the award of summary judgment. See, for example, Shotkin v. Mutual Benefit Health & Accident Ass'n, 2 Cir., 138 F.2d 531; Altman v. Curtiss-Wright Corp., 2 Cir., 124 F.2d 177, 180; Milcor Steel Co. v. George A. Fuller Co., 2 Cir., 122 F.2d 292, affirmed 316 U.S. 143, 62 S.Ct. 969, 86 L.Ed. 1332; Bushwick-Decatur Motors v. Ford Motor Co., 2 Cir., 116 F.2d 675; Banco de Espana v. Federal Reserve Bank of New York, 2 Cir., 114 F.2d 438, 445; Piantadosi v. Loew's, Inc., 9 Cir., 137 F.2d 534; Board of Public Instruction v. Meredith, 5 Cir., 119 F.2d 712, certiorari denied 314 U.S. 656, 62 S.Ct. 109, 86 L.Ed. 526.

In the present case we have from the plaintiff not even a denial of the basic facts, but only in effect an assertion that at trial she may produce further evidence, which she is now holding back, to controvert the legal deduction from the New York statute and decisions that the conceded misrepresentations of the application are material. If one may thus reserve one's evidence when faced with a motion for summary judgment there would be little opportunity "to pierce the allegations of fact in the pleadings" or to determine that the issues formally raised were in fact sham or otherwise unsubstantial. It is hard to see why a litigant could not then generally avail himself of this means of delaying presentation of his case until the trial. So easy a method of rendering useless the very valuable remedy of summary judgment is not suggested in any part of its history or in any one of the applicable decisions.

Judgment affirmed.

[2] Thus, Mr. Justice Shientag, in his illuminating article, Summary Judgment, 4 Fordham L.Rev. 186, states at page 201 that "one moving for summary judgment should be prepared to put his cards on the table, and to anticipate a defense which may be interposed," and, at pages 205–207, that the opposing affidavits must go fully into the facts or, as Lord Blackburn said in Wallingford v. Directors, etc., of the Mutual Soc., 5 App.Cas. 685, 704, they must "condescend upon particulars." See, also, Clark, Summary Judgments, 25 J. Am.Jud.Soc. 20, 1942 Handbk. Nat. Conf. of Judicial Councils 55, together with the cases there cited.