**H. B. GOLDSMITH et al., Appellants,**

**v.**

**G. R. CATHEY, County Judge, et al.,**
**Appellees.**

**No. 16059.**

Court of Civil Appeals of Texas.

Fort Worth.

Jan. 8, 1960.

Rehearing Denied Feb. 5, 1960.

Black & Stayton and Thomas Black, Austin, for appellants.

W. D. Brown, Quitman, Attorney for appellees, The First National Bank of Quitman, The First National Bank of Mineola, and The First National Bank of Winnsboro.

James L. Hartsfield, County Attorney of Wood County, Quitman; Gibson, Spence & Gibson, Austin; and Graves, Dougherty & Gee and Thomas Gibbs Gee, Austin, for G. R. Cathey, County Judge of Wood County, and the County Commissioners of Wood County.

MASSEY, Chief Justice.

Summary judgment in behalf of the defendants was granted in the trial court and the plaintiffs appealed.

Judgment affirmed.

Appellants, who were plaintiffs below, were taxpaying landowners of Wood County, Texas. Appellees were essentially the County Judge and the County Commissioners of Wood County.

Events giving rise to plaintiffs' suit were as follows: On December 7, 1957, after prior notice thereof, appellees, acting in their respective official capacities, caused an election to be held in Wood County at which the voters of the county voted upon two submitted propositions: (1) whether the appellees should be authorized to levy, assess and collect ad valorem taxes on all taxable property within the county under the provisions of Vernon's Ann.Tex. Civ.St. Art. 7048a for flood control purposes; and (2) whether appellees should be authorized to issue bonds of Wood County in the total sum of $2,500,000, to be paid from such taxes under the provisions of said article. Both propositions were approved by the voters.

In bringing suit the appellants sought relief as follows: (1) judgment enjoining appellees from issuing any bonds of Wood County pursuant to the election; and alternatively (2) enjoining appellees from using and expending the proceeds of the sale of such bonds, if any, to construct or operate any of the four dams or reservoirs proposed to be constructed and operated through the expenditure of such proceeds; (3) from assessing and collecting taxes against appellants' property in Wood County to pay said bonds or finance said dams and reservoirs. Alternatively, and if and in the event it should be determined that only a portion of each dam and reservoir was to be constructed and operated solely for purposes other than flood control, like relief was prayed for to the extent of such portion or portions.

Premise for the relief sought by appellants was founded in the contention that the "sole purpose and use of the construction and operation of the * * * dams and reservoirs is for recreation or for purposes and uses other than flood control and in no event are said dams and reservoirs, as shown by the * * * plans and designs, to be constructed or operated or will they be used for flood control purposes." By reason of their contention, say appellants as to all and several of the dams and reservoirs in different sections of the county, their construction and operation are illegal in violating the provisions of Article 8, Section 1-a, of the Constitution of Texas, Vernon's Ann.St., and of the aforementioned Art. 7048a.

It is to be noted that no part of the relief sought relates to the operation of the dams and reservoirs after they are completed. Appellants boldly seek to prevent any construction whatever, any acquisition of land, and any issuing of bonds or levying of taxes necessary to such construction and acquisition.

Appellees point out, and we agree, that in order to obtain the relief prayed for the appellants carry the heavy burden of demonstrating by proof that the projects intended to be accomplished, or one or more of them, serve no flood control purpose within the contemplation of Art. 7048a.

The issuance of bonds and the assessment and collection of taxes as voted in the propositions submitted to the voters of Wood county are controlled by the provisions of Article 8, Section 1-a of the Constitution, which authorizes such assessment and collection "provided the revenue derived therefrom shall be used for construction and maintenance of Farm to Market Roads or for Flood Control * * *." Article 7048a, enacted pursuant to said constitutional provisions, and which also governs said propositions, authorizes the collection of ad valorem taxes and the issuance of bonds to be paid therefrom "for the construction and maintenance of Farm-to-Market and Lateral Roads or for Flood Control and for these two (2) purposes

only." Section 5 of Art. 7048a provides that the Flood Control Funds so raised shall be used solely for Flood Control purposes. Further, Flood Control purposes were stated to include "all soil conservation practices such as contouring, terracing, tank building, and all other practices actually controlling and conserving moisture and water, * * * provided that such plans for improvement are approved by such county and political subdivision." In this instance the plans had been so approved.

The pleadings of the parties did make a fact issue upon the appellants' averment that the projects, plural or singular, all or several, serve no flood control purposes. At this stage the appellees filed their motion for summary judgment, supported by affidavits. Allegations of the motion were to the effect that each of the proposed dams and reservoirs in question by appellants and made the subject of the suit will actually control and conserve moisture and water, and that each of them will actually and effectively control the waters of a stream which has in the past flooded destructively and contributed to destructive floods. Affidavits attached to the motion were based upon personal knowledge as to past history of the streams to be dammed and by expert engineering data concerning the reduction in the flow of flood waters to which the streams are subject.

The appellants countered by affidavits which showed that as to one of the dams contemplated the area which would be flooded by the reservoir behind the dam would be more than 687 acres of land, while the amount of acreage subject to being flooded below the dam was only 112 acres; that the appellees had applied to the Board of Water Engineers of the State of Texas for the right to appropriate water in connection with each reservoir and to retain in each of them a certain amount of water for recreational purposes, and that the amounts to be retained for such purposes, under the applications, were so great as to minimize or almost completely eliminate the usefulness of the reservoirs and dams in inhibiting floods; that the plans for the drainage of each reservoir were such that it would require varying numbers of days to drain the water intended to be retained behind the dams, but the least of which would be 112 days, said amounts of water being that stated by one of the appellees to be the number of acre feet in each of the reservoirs contemplated to be retained at all times when the flow of water permits.

■ The object of the summary judgment rule is to permit either party to brush aside groundless allegations in the pleadings and to obtain prompt disposition of the action where there are no genuine issues of fact; and hence a trial would be an empty formality. Engl v. Aetna Life Ins. Co., 2 Cir., 1943, 139 F.2d 469. The question before us is whether the trial court was correct in its holding that appellees had done so in this instance.

■ While the appellants filed so-called counter-affidavits controverting appellees' motion, we do not believe that their evidence raised a genuine issue of a fact material to the maintenance of their suit. Generally a genuine issue of a material fact is not raised by allegations in a pleading when they are controverted by affidavits or other evidence, in the absence of counter-affidavits or evidence to sustain them. Wilkinson v. Powell, 5 Cir., 1945, 149 F.2d 335. We have already noted that the pleadings made an issue upon a material fact. We have also noted that the appellants do not seek any relief relating to the operation of the dams and reservoirs after their construction. Despite the validity of a complaint that the appellants might either immediately or at a later time be in position to make, we must confine ourselves to the complaint before us and govern the controversy by the rules of law applicable to the case as so confined. When we ignore the complaints appellants have no present right to assert and confine ourselves to the complaint appellants do presently rightfully present, it seems inescapable that no proper conclusion could be reached upon the affidavits and counter-affidavits other than that appellants have failed to demonstrate the existence of a fact issue as to whether the

.. 

dams and reservoirs, considered severally or as a whole, serve no flood control purpose. The presumption upon which we necessarily proceed in this case assumes, of course, the regularity of the proceedings of the administrative governmental body, both past and prospective.

Formal issues framed in the pleadings are not controlling when extrinsic evidence demonstrates the absence of any true issue. McFarland v. Connally, Tex. Civ.App. Fort Worth 1952, 252 S.W.2d 486; Reese v. Davitte, Tex.Civ.App. Fort Worth 1953, 255 S.W.2d 1015; Saenz v. Lower Rio Grande Valley Chamber of Commerce, Tex.Civ.App. San Antonio 1956, 296 S.W.2d 806. Where a party's motion for summary judgment has support in affidavits or other extrinsic evidence which will sustain his contention that there is no genuine issue of fact, the opponent should be required to adequately demonstrate by receivable facts that a real, not formal, controversy exists, in order to overcome the force of the motion. McDonald Texas Civil Practice, Vol. 4, 1958 Cumulative Supplement, p. 40, "Judgments", sec. 17.26.3 "(New—(II) Reply to Motion".

Judgment affirmed.