**ROYAL BEAD NOVELTY CO., Inc.**

v.

**UNITED STATES.**

**C.D. 4353, Port of New York, Court No. 67/78363–45352–67 on American goods returned.**

United States Customs Court.
May 10, 1972.

was placed thereon which imparted to the beads a so-called Aurora Borealis finish. The merchandise was then returned to the United States in 1966 and assessed duty of 14 percent under item 741.30 of the tariff schedules as—

> Beads, bugles, and spangles (except natural, cultured, or imitation pearls), not strung (except temporarily) and not set:
>
> \* \* \* \* \* \*
>
> Other

Plaintiff has challenged this assessment, claiming that the application of the Aurora Borealis finish constituted an "alteration" within the meaning of item 806.20 as defined in 19 CFR § 10.8 of the customs regulations, and that by virtue of these provisions, duty is assessable only upon the invoiced cost of the coating at the rate of 14 percent under item 741.30.

Item 806.20 reads as follows:

> Articles returned to the United States after having been exported to be advanced in value or improved in condition by any process of manufacture or other means:
>
> \* \* \* \* \* \*

| | | |
|---|---|---|
| 806.20 | Articles exported for repairs or alterations ... | A duty upon the value of the repairs or alterations (see headnote 2 of this subpart) [1] |

19 CFR § 10.8 provides that—

> (a) For the purposes of item 806.20, Tariff Schedules of the United

Siegel, Mandell & Davidson, New York City (Steven S. Weiser, Jamaica, of counsel), for plaintiff.

L. Patrick Gray, III, Asst. Atty. Gen. (Velta A. Melnbrencis, Trial Atty.), New York City, for defendant.

MALETZ, Judge:

This action involves the proper rate of duty on glass beads that plaintiff, a manufacturer and importer of costume jewelry, exported in 1965 from the United States to Austria where a half-coating

---

[1] This headnote 2 (which is contained in subpart B, part 1, schedule 8 of the tariff schedules) reads in part:

> 2. *Articles repaired, altered, processed, or otherwise changed in condition abroad.*—The following provisions apply only to items \* \* \* 806.20 \* \* \* :
>
> (a) The value of repairs, alterations, processing, or other change in condition outside the United States shall be—
>
> (i) the cost to the importer of such change; or
>
> (ii) if no charge is made, the value of such change,

States, the term "repairs or alterations" shall be held to mean restoration, change, addition, renovation, cleaning, or other treatment which does not destroy the identity of the article exported or create a new or different article.

The sole question in the case is whether (as plaintiff argues) the application of a half-coating of Aurora Borealis constituted an "alteration" within the purview of item 806.20 or whether (as defendant argues) the application was more than an "alteration" and, in effect, created a new commercial article by changing its character, identity and use.

Plaintiff has moved for summary judgment pursuant to rule 8.2 contending that, upon the pleadings and affidavit filed in support thereof, there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Defendant, filing an affidavit, stipulation and interrogatories in opposition, alleges that there are factual issues in controversy which remain to be tried and that, even assuming the absence of a real issue of fact, plaintiff is not entitled to judgment.

Rule 8.2 provides that—

(d) * * * Judgment shall be rendered in favor of the party entitled thereto as a matter of law, if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact.

* * * * * *

(f) * * * When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, will be entered against him.

In this setting, the court is presented with the threshold question as to whether, on the basis of the pleadings, affidavits, and other documents, there is a genuine triable issue of fact.

At the outset, it is important to note that the summary judgment procedure "is intended to permit 'a party to pierce the allegations of fact in the pleadings and to obtain relief by summary judgment where facts set forth in detail in affidavits, depositions, and admissions on file show that there are no genuine issues of fact to be tried.'" Engl v. Aetna Life Ins. Co., 139 F.2d 469, 472 (2d Cir. 1943). Therefore, mere formal denials or general allegations, which create the appearance of dispute but do not set forth specific facts, are not sufficient to raise a genuine issue of fact or to foreclose summary judgment. Minnesota Mining & Mfg. Co. v. Superior Insulating Tape Co., 284 F.2d 478 (8th Cir. 1960); Gifford v. Travelers Protective Ass'n of America, 153 F.2d 209 (9th Cir. 1946); Engl v. Aetna Life Ins. Co., supra; Allen Forwarding Co., a/c Liberty Fabrics of New York, Inc. v. United States, 68 Cust.Ct. ——, C.D. 4337, 340 F.Supp. 412 (1972).

With these considerations in mind, we turn first to the pleadings. Plaintiff alleges in the complaint that the application of the Aurora Borealis finish did not change the character, identity or use of the imported merchandise in the Unit-

as set out in the invoice and entry papers; except that, if the appraiser concludes that the amount so set out does not represent a reasonable cost or value, then the value of the change shall be determined in accordance with section 402 or 402a of this Act.

(b) No appraisement of the imported article in its changed condition shall be required unless necessary to a determination of the rate or rates of duty applicable to such article.

(c) The duty upon the value of the change in condition shall be at the rate which would apply to the article itself, as an entirety without constructive separation of its components, in its condition as imported if it were not within the purview of this subpart. * * *

ed States from that of the exported merchandise, but constituted an "alteration," thus entitling the merchandise to entry under item 806.20.

Defendant's amended answer denies plaintiff's allegations as to the effect of the coating and avers that the application of the finish did change the character, identity, or use of the imported merchandise from that of the exported merchandise in that (1) articles such as the former are bought, sold, ordered, or known as Aurora Borealis or coated beads, whereas the uncoated kind are not; (2) they cost more than uncoated beads; (3) they have a different appearance from uncoated beads by reason of the luster or iridescent effect obtained from the coating; and (4) articles made therefrom also cost more than articles made from uncoated beads.[2]

In support of its motion for summary judgment, plaintiff has filed an affidavit of Paul G. Detkin, president of the plaintiff corporation, stating that during the period 1965 through 1966, he was secretary and vice-president of the corporation and responsible for the purchasing, financing, marketing and sales of his company's merchandise; that he is personally familiar with the merchandise involved here in its exported (uncoated) and imported (half-coated) condition, having arranged the details of the shipment and having purchased and sold it. Detkin's affidavit further states that—

6. Both the uncoated and half-coated beads were used by my company interchangeably in the making of articles of jewelry; the determination being dependent solely upon the requirements of our customers.

7. During the period 1965 through 1966 inclusive, due to the constantly changing fashion trends of the jewelry industry, there was a strong demand for coated beads.

8. Due to such demand, and because of Plaintiff corporation's inability to sell the instant merchandise in its uncoated state, the merchandise was exported to Austria solely for the purpose of having placed thereon a half-coating, the effect of which was merely to impart a rainbow-like luster.

9. Subsequent to importation, the beads were used for the making of articles of jewelry in exactly the same manner as prior to their being half-coated.

Defendant has filed with its opposing papers interrogatories propounded to plaintiff's affiant, Paul Detkin. His answers indicate that plaintiff had purchased the merchandise in question as "uncoated" beads; that, after their return from Europe, the coated beads were used by plaintiff, as were its uncoated beads, in the manufacture of various articles of costume jewelry, such as earrings and bracelets; and that the articles made with coated beads sold at higher prices than those using uncoated beads.[3]

Detkin's answers also brought out that during 1965 and 1966 another person was in charge of the books and records showing the transactions involving the purchase, sale and use of uncoated and coated beads; that the original records of plaintiff's purchase of the beads in question were no longer available (however, Detkin appended a copy of the list submitted to the Bureau of Customs when the present merchandise was exported which set forth the prices per ten gross originally paid for the beads); and that, since the imported beads were not segregated from plaintiff's regular stock of coated beads, there was no way of knowing when, at what prices, or to whom the

---

2. It is not disputed that the customs regulations governing the presentation of documents in case of a claim for "repairs" or "alterations" under item 806.20 have been complied with, and that the liquidated duties have been paid.

3. Thus, if a customer's order for articles using coated beads could not be filled, he would receive credit on the purchase price if he accepted merchandise with the uncoated beads instead.

articles manufactured with the use of such beads were sold, although they were sold to a number of its regular customers. Detkin appended to the answers a price list for articles manufactured with coated beads and two invoices listing sales prices of articles made with uncoated beads.

Defendant also filed a stipulation between the parties and an affidavit of a Bureau of Customs officer, both of which state that the imported beads, without the Aurora Borealis finish or coating, were manufactured by an Austrian firm which, during 1965 and 1966, offered for sale, or sold, for exportation to the United States, the coated beads at prices 20 percent higher than it offered for sale, or sold, similar uncoated beads.

Against this background, defendant insists that plaintiff has not established the absence of any genuine issue of fact. However, it fails to specify what issue remains for trial. The pleadings and evidentiary matter in support of plaintiff's motion have not been controverted in any material fashion; and the documents filed by defendant set forth no facts which show the existence of a material factual dispute. Instead, defendant quibbles over details of plaintiff's allegations, professing, for example, inability to understand what is meant by Detkin's statements that the uncoated and half-coated beads were used by his company "interchangeably in the making of articles of jewelry; the determination being dependent solely upon the requirements of our customers," and that the imported beads "were used for the making of articles of jewelry in exactly the same manner as prior to their being half-coated." These statements are clear enough to the court and stand undisputed. Defendant's suggestion that these statements are nothing more than the affiant's "subjective opinions" is mere cavil.

What the defendant has done, in essence, is to confuse the preliminary issue, i. e., whether there are any material facts in controversy, with the ultimate legal question which turns upon the application of the uncontroverted facts. In other words, the government does not dispute or deny the facts alleged by plaintiff in support of its claim, but rather, the effect or interpretation placed upon them by plaintiff. Thus, defendant does not deny that the half-coating of Aurora Borealis finish imparts a "rainbow-like" luster (plaintiff's words) or "iridescent effect" (defendant's language) to the beads, but differs over its significance, that is, whether or not it constitutes an "alteration" as a matter of law.

Similarly, it is not disputed that glass beads of the kind in issue here, unlike uncoated beads, are bought, sold, ordered, or known as Aurora Borealis or coated beads, or that they, and the articles made therefrom, cost more than uncoated beads or articles utilizing them.

■ Furthermore, defendant's objection to the affiant Detkin's competency to testify is without merit. The fact that he was not in charge of the original books and records kept by plaintiff showing the transactions involving coated and uncoated beads does not affect his ability to testify in those areas as to which he had personal knowledge. Certainly the officer "responsible for the purchasing, financing, marketing and sales" of his company's merchandise would know how and to what purpose the firm uses its goods. Executives concerned with ordering, importing, selling and marketing an article have to know its uses and have been held competent to testify about them. Al Nyman & Son, Inc. v. United States, 61 Cust.Ct. 236, 241, C.D. 3585 (1968), and cases cited.

■ Nor does Detkin's failure to produce the original purchase orders for the beads in question vitiate his affidavit. In this respect, it is noted that Detkin appended to his answers a copy of the list submitted to the Bureau of Customs when the merchandise was exported, setting forth the prices originally paid for

the beads, and that its accuracy has not been questioned.

▮▮ In short, defendant's failure to proffer specific facts in opposition by way of affidavit, deposition, admission or otherwise requires that the statements in plaintiff's supporting affidavit be accepted as true. See e. g., Allen Forwarding Co., a/c Liberty Fabrics of New York, Inc. v. United States, *supra*, 68 Cust.Ct. at ——, 340 F.Supp. 412. On the record here, it must be concluded that there is no genuine issue of fact for trial.

This brings us to the question as to whether the application of the Aurora Borealis finish constituted an "alteration" within the meaning of item 806.20, as defined in 19 CFR § 10.8. In point on this aspect is Amity Fabrics, Inc. v. United States, 43 Cust.Ct. 64, C.D. 2104 (1959). In *Amity*, "pumpkin" colored velveteen was sent abroad for the sole purpose of redyeing it black since "pumpkin" was not in fashion at that time, whereas black was a consistently good seller. The president of the plaintiff corporation testified that the redyeing did not change the use of the merchandise and that it was offered to the same trade. It was stipulated that the redyeing in no way changed the quality, texture, or character of the material.

The court held that the redyeing constituted an alteration and sustained plaintiff's claim for classification under paragraph 1615(g) (1) of the Tariff Act of 1930[4] (the predecessor to item 806.20), stating (43 Cust.Ct. at 68):

> * * * The Customs Regulations (section 10.8(a)) provide that, for the purposes of paragraph 1615(g) (1), the term "repairs or alterations" means restoration, change, addition, renovation, cleaning, or other treatment which does not destroy the identity of the article exported or create

a new and different article. In the instant case, the identity of the goods was not lost or destroyed by the dyeing process; no new article was created; there was no change in the character, quality, texture, or use of the merchandise; it was merely changed in color. The Government has conceded and we find that such change constitutes an alteration. C. S. Emery & Co. v. United States, 71 Treas.Dec. 880, T.D. 49000; G. L. Ramsey a/c The Juvenile Mfg. Co., Inc. v. United States, 26 Cust.Ct. 603, Reap.Dec. 7978; John L. Westland & Son, Inc. v. United States, 42 Cust.Ct. 296, Abstract 62803.

Here, as in *Amity* the identity of the articles in question was not lost or destroyed in the coating process and no new articles were created; beads went out and beads came back. Moreover, there was no change in their size, shape, or manner of use in making articles of jewelry. The sole change was in the finish in that the imported beads now possessed a rainbow-like luster. This did not change their quality, texture, or character.

▮ Their higher value as imported, a point stressed by defendant, does not, of course, preclude the beads from classification under the claimed provision which is governed by a headnote specifically covering articles which have been "exported *to be advanced* in value or improved in condition." [Emphasis added.] Also, the fact that the importations are known as Aurora Borealis or coated beads merely serves to distinguish them from uncoated beads in much the same way that like articles are distinguished from each other by color, i. e., "pumpkin" velveteen from "black" velveteen.

The cases relied upon by defendant, A. F. Burstrom v. United States, 44 CCPA 27, C.A.D. 631 (1956), and C. J.

---

4. Par. 1615(g) (1), as amended by the Customs Simplification Act of 1954, provides:

Any article exported from the United States for repairs or alterations may be returned upon the payment of a duty upon the value of the repairs or alterations at the rate or rates which would apply to the article itself in its repaired or altered condition if not within the purview of this subparagraph (g).

Tower & Sons of Niagara, Inc. v. United States, 45 Cust.Ct. 111, C.D. 2208 (1960), are not in point. In *Burstrom,* steel ingots exported to Canada were reimported after being converted into steel slabs which, the court held, were not the same articles as ingots differing therefrom in name, value, appearance, size, shape, use and classification and, therefore, not within the purview of paragraph 1615(g) as articles exported for alterations.

The *Tower* case involved certain cotton drills known in the trade as greige or grey goods, which were processed in Canada by stretching, dyeing and sizing, and returned to the United States as finished cloth backing. The processing was held to constitute more than an alteration within the purview of section 1615(g) since the importation was a new article, differing from the exported merchandise in color, width, length, porosity, weight, tensile strength, texture, suppleness, distribution of threads in the weave, use and classification.

■ Accordingly, it is concluded that on the undisputed facts plaintiff has overcome the presumption of correctness attaching to the classification and has established that the application of the Aurora Borealis finish neither destroyed the identity of the exported beads nor created a new or different article, but constituted an "alteration" within the intendment of item 806.20 and 19 CFR § 10.8. Therefore, the merchandise is subject to duty solely upon the value of the alterations at the rate which would apply to the article itself, in its condition as imported, if it were not within the purview of this subpart. See headnote 2(c), *supra.*

■ Defendant's contention that the action should be dismissed for prematurity because "it appears that the appraiser did not find a cost or value for the alterations within the contemplation of schedule 8, part 1, subpart B, headnote 2(a)" is without merit. Headnote 2(a) provides, as we have seen, that "[t]he value of repairs, alterations, processing, or other change in condition outside the United States shall be—(i) the cost to the importer of such change * * * as set out in the invoice and entry papers * * *." The commercial invoice accompanying the entry papers clearly sets out the value of the uncoated beads under Column "A", and the cost to the importer for "coating per 10 gross" under Column "B", with the "total coating amount" listed in the third column. These figures are followed by the statement "[a]ll items appraised at (total) values in Col. A plus (unit) values in Col. B plus 10% less 3% pkd." Customs Form 5555 accompanying the entry papers, which notified the importer of the proposed increase in duties, states "[d]utiable fully at total for 'Value uncoated' plus total 'Coating amount' plus 10% less 3% pkd." Thus, it is clear that the cost to the importer for the coating, as set forth in the invoice, was accepted by the appraiser.

Plaintiff's motion for summary judgment is granted.