748 F.2d 166
 1984-2 Trade Cases 66,291
 OUT FRONT PRODUCTIONS, INC., Appellant
v.
Larry MAGID, Joseph Spivak, Herbert Spivak, and Allen
Spivak, Individually and trading as Electric
Factory Concerts and Tower Theatre, Inc.
 No. 83-1672.
 United States Court of Appeals,
Third Circuit.
 Argued April 6, 1984.
Decided Nov. 19, 1984.
 
 Mitchell A. Kramer (Argued), Alice G. Burt, Richard M. Abrams, Kramer, Kapustin & Schatz, Philadelphia, Pa., for appellant.
 Richard P. McElroy (Argued), Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for appellees.
 Before GIBBONS, SLOVITER, Circuit Judges, and MENCER, District Judge*
 OPINION OF THE COURT
 SLOVITER, Circuit Judge.
 
 I.
 A.
 
 1
 Plaintiff Out Front Productions, Inc., a former promoter of rock concerts, appeals from the grant of summary judgment against it in its antitrust action against defendant concert promoters, Larry Magid, Joseph Spivak, Herbert Spivak, and Allen Spivak, individually and trading as Electric Factory Concerts and Tower Theatre (hereafter collectively referred to as EFC).
 
 
 2
 Out Front contends that EFC prevented it from successfully promoting large-scale white-oriented rock concerts in Philadelphia because EFC, which had a contractual exclusive arrangement from January 1, 1972 to December 31, 1976 to promote rock concerts at the Spectrum, the largest indoor facility and apparently the most attractive to rock performers, maintained its exclusivity beyond that date and unreasonably denied it access to that facility. It also contends that from at least 1972 until April 1980 EFC attached to the contracts with the performers it promoted a "Standard Addendum", which gave EFC certain exclusive rights to those performers in the Philadelphia area for a 75 day period, provided a six months' right of first refusal of the performer's services, and imposed certain advertising restrictions. It contends that EFC's use of the Standard Addendum was a predatory practice to maintain and bolster the monopoly power it acquired through its exclusive access to the Spectrum for rock concert promotion. Out Front alleged that EFC unlawfully conspired to eliminate competition and restrain trade in violation of section 1 of the Sherman Act, 15 U.S.C. Sec. 1, and monopolized or attempted to monopolize the promotion of white-oriented rock music concerts in the Philadelphia metropolitan area in violation of section 2 of the Sherman Act, 15 U.S.C. Sec. 2.
 
 B.
 
 3
 Out Front was formed in 1977 by Richard Fuller, its sole shareholder and general manager. Between September and November of that year it produced 12 concerts, ten at the Trenton War Memorial, a medium-size facility, and two in Philadelphia, one at the Civic Center and the other at the Tower Theatre, a smaller facility owned by defendants. Fuller had promoted a number of rock concerts in Trenton in 1974 and 1975, when he did business under the name Hollow Moon. Nearly all of Out Front's concerts were unprofitable. Apart from one unsuccessful effort to promote a concert in Trenton in 1979, it appears to have ceased operations soon after its last concert in November 1977.
 
 
 4
 Out Front raises no claim that defendants interfered with its business in Trenton. Its claim in this suit is based on the theory that it would have become a successful promoter of white-oriented rock concerts in Philadelphia had defendants made the Spectrum available for its concerts. See Brief for Appellant at 4.
 
 
 5
 At the close of discovery, defendants moved for summary judgment, claiming Out Front could not show it had been "prevented from presenting concerts" in the absence of evidence that it sought and was refused access to the Spectrum and that it sought the services of rock performers for such concerts. The district court granted summary judgment, stating that the record was "devoid of evidence suggesting that [Out Front] demanded access to the Spectrum", App. at 751a, that Out Front "failed to meet its justifiably rigorous burden of proving that a demand for access to Philadelphia-area concert facilities would have been futile", App. at 754a, and that Out Front failed to produce evidence that "the standard addendum was a feature of any contract defendants may have had with any [performer] to whom plaintiff claims to have been denied access." App. at 756a. The court later denied Out Front's motion to alter or amend judgment based on further submissions, reaffirming its original opinion.
 
 II.
 A.
 
 6
 We consider first the district court's conclusion that Out Front's "failure to demand access to Philadelphia concert venues deprives it of the standing needed to challenge the alleged exclusion." App. at 756a. The issue in this case is not one of standing in the sense of plaintiff's power to bring suit. Out Front claims a direct economic injury traceable to defendants' actions that allegedly violated the antitrust laws. This was enough to confer standing as required by Article III of the Constitution, see, e.g., Association of Data Processing Service Organizations v. Camp, 397 U.S. 150, 152, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970), and under section 4 of the Clayton Act, 15 U.S.C. Sec. 15, which entitles "any person ... injured in his business or property" by an antitrust violation to recover damages. Moreover, it is clear that businesses that are hindered from forming or from entering a new market come within the zone of interests protected by the antitrust laws and may maintain suit for damages and for injunctive relief. See generally ABA Antitrust Section. Antitrust Law Developments 393 (2d ed.1984). Thus Out Front had adequate standing to maintain this suit.
 
 B.
 
 7
 As this court recently set forth in Weiss v. York Hospital, 745 F.2d 786 (3d Cir.1984), a private antitrust plaintiff must demonstrate (1) a violation of the antitrust laws and (2) a right either to the treble damage remedy under section 4 of the Clayton Act or to injunctive relief under section 16 of the Clayton Act. At 804-805. In this case, neither the motion for summary judgment nor the court's opinion granting it were predicated on plaintiff's failure to establish a genuine issue of material fact as to defendants' violation of the antitrust laws. Therefore, for purposes of this appeal we assume that EFC violated sections 1 and 2 of the Sherman Act, as alleged, through an unlawful monopoly of large-scale white-oriented rock concerts in Philadelphia, furthered by predatory and conspiratorial practices including unreasonable exclusive dealing arrangements with the owners of the Spectrum and the use of the Standard Addendum in contracts EFC signed with certain rock performers.
 
 
 8
 However, plaintiff also bears the burden of showing causation, i.e., that defendants' alleged unlawful conduct was a material cause of injury to its business or property. Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 114 n. 9, 89 S.Ct. 1562, 1571, n. 9, 23 L.Ed.2d 129 (1969). See Danny Kresky Enterprises Corp. v. Magid, 716 F.2d 206, 209-10, 211-12 (3d Cir.1983). Although the burden is not a heavy one, since "a plaintiff need not exhaust all possible alternative sources of injury", Zenith Radio Corp., 395 U.S. at 114 n. 9, 89 S.Ct. at 1571 n. 9, if plaintiff fails to establish a causal relationship between its financial difficulties and defendants' antitrust violations, its case must fail. Van Dyk Research Corp. v. Xerox Corp., 631 F.2d 251 (3d Cir.1980), cert. denied, 452 U.S. 905, 101 S.Ct. 3029, 69 L.Ed.2d 405 (1981).
 
 
 9
 In concluding that summary judgment for EFC was appropriate, the district court stated, "In antitrust cases in which the defendants allegedly refuse to deal, the plaintiff must make a demand for access to the market from which it is allegedly excluded", or prove that the situation falls within the "very narrow" futility exception. App. at 750a, 751a. To the extent that this suggests that demand is an immutable requirement, it runs counter to the Supreme Court's caution that courts "should not add requirements to burden the private litigant beyond what is specifically set forth by Congress in [the antitrust] laws." Radovich v. National Football League, 352 U.S. 445, 454, 77 S.Ct. 390, 395, 1 L.Ed.2d 456 (1957); see also Radiant Burners, Inc. v. Peoples Gas Light & Coke Co., 364 U.S. 656, 660, 81 S.Ct. 365, 367, 5 L.Ed.2d 358 (1961).
 
 
 10
 Antitrust suits are subject to no prerequisite, such as that imposed by Fed.R.Civ.P. 23.1 for shareholder derivative suits, requiring that the complaint allege a demand or show futility. Demand is a prerequisite in derivative litigation so that the corporation on whose behalf suit is brought has the opportunity to apply its business judgment to the claims raised, a rationale patently inapplicable to a private antitrust plaintiff. Treating a "demand" by an antitrust plaintiff as if it were a condition precedent to maintenance of the suit misdirects the relevant focus, which should be on whether plaintiff has adduced the requisite proof of causation. No persuasive reason has been suggested why evidence of a demand is the only way to prove causation. In fact, in three cases where the defendants' exclusionary practices impeded the business or expansion of an established participant, the Supreme Court rejected the contention that suit was barred by plaintiffs' failure to make a demand.
 
 
 11
 In Continental Ore Co. v. Union Carbide & Carbon Corp., 370 U.S. 690, 699, 82 S.Ct. 1404, 1410, 8 L.Ed.2d 777 (1962), the Supreme Court stated, "[W]e do not believe that respondents' liability under the antitrust laws can be measured by any rigid or mechanical formula requiring [a plaintiff] both to demand materials from respondents and to exhaust all other sources of supply." The Court held that causation could be shown by other evidence, such as defendants' interference with independent sources of supply relied upon by plaintiff. Id. The Court stated that the question presented under the antitrust laws was whether there was "sufficient evidence for a jury to infer the necessary causal connection between respondents' antitrust violations and petitioners' injury." Id. at 700, 82 S.Ct. at 1411. In Hanover Shoe, Inc. v. United Shoe Machinery Corp., 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968), the Court held that a shoe manufacturer was entitled to damages against the manufacturer and distributor of shoe machinery who would only lease, but not sell, the equipment. Although plaintiff apparently produced no evidence to show that it had demanded to buy the equipment, the district court found that plaintiff would have bought rather than leased had it been given the opportunity to do so. The Supreme Court stated that, "in the circumstances of this case it was unnecessary for [plaintiff] to prove an explicit demand during the damage period." Id. at 487 n. 5, 88 S.Ct. at 2228 n. 5 (citing Continental Ore ). In the third case, Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 120 n. 15, 89 S.Ct. 1562, 1575 n. 15, 23 L.Ed.2d 129 (1969), the Court held that an antitrust plaintiff's failure to make a formal request for a patent license from a patent pool was not fatal to its case because the pool had made its position entirely clear.
 
 
 12
 It is apparent from these cases that there is no rigid formula calling for a demand in order for plaintiff to show the requisite causality.[1] On the other hand, a refused demand is often the best evidence of causation, and the absence of a demand in the circumstances of the particular case may, indeed, be fatal to plaintiff's ability to show causation. In the three Supreme Court cases holding demand was not a prerequisite there had been a course of dealing and participation in the market from which the Court permitted the fact finder to infer the causal nexus between the antitrust violation and plaintiff's injury. However, in the absence of such circumstances, a similar inference will ordinarily be unavailable. Thus, a company expanding either into a new geographic territory or product line or beginning business altogether must show not only that it had the background, experience, and financial ability to make a viable entrance, but even more important, that it took affirmative actions to pursue the new line of business. See Hecht v. Pro-Football, Inc., 570 F.2d 982, 994 (D.C.Cir.1977), cert. denied, 436 U.S. 956, 98 S.Ct. 3069, 57 L.Ed.2d 1121 (1978); Triangle Conduit & Cable Co. v. National Electric Products Corp., 152 F.2d 398, 399-400 (3d Cir.1945). See generally 2 P. Areeda & D. Turner, Antitrust Law Sec. 335c (1978); ABA Antitrust Section, Antitrust Law Developments 393 & nn. 73-74 (2d ed.1984). Proof of a demand will generally be the best evidence to show that a plaintiff was poised and ready to enter the market. Otherwise there is unlikely to be any plausible evidence to show that defendants impeded this effort. Certainly, the law will not countenance a dormant plaintiff who springs into action only when it is time to file suit.
 
 
 13
 To recapitulate, an antitrust plaintiff who sues claiming it was excluded from the market, whether by a conspiracy or monopolistic conduct, must produce sufficient evidence from which the trier of fact can find a causal connection between the violation and the injury. Although summary judgment should be used only sparingly in antitrust cases, Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962), "there are patently justifiable reasons why a trial court should ascertain, before embarking on a lengthy antitrust trial, whether plaintiff will be able to present some evidence that the injury of which it complains can be attributable to the alleged antitrust violation." Van Dyk Research, 631 F.2d at 258 (Sloviter, J., concurring). Thus we turn to examine whether the district court was justified in giving summary judgment against plaintiff on the record before it.
 
 C.
 
 14
 EFC filed its motion for summary judgment supported by specific affidavits and deposition testimony stating that plaintiff never sought to lease the Spectrum and that qualified promoters' demands for concert dates were accepted. It filed the affidavit of Allen B. Flexer, Vice-President of the Spectrum's parent corporation, who had the responsibility of negotiating with persons desiring to lease the Spectrum. Flexer's affidavit stated that before suit was filed, he had never heard of Out Front or Richard Fuller, and averred that "during the period 1977 to date, neither Out Front Productions, Inc. nor Richard Fuller ever contacted me or any other Spectrum official responsible for leasing for the purpose of seeking available dates for presentation at the Spectrum of any music concerts." App. at 486a. This was supported by the affidavit of his assistant, Stephen Greenberg. App. at 693a. Flexer's affidavit set forth a list of promoters to whom the Spectrum was leased during the relevant period.
 
 
 15
 In response to the motion for summary judgment, plaintiff presented an affidavit by Richard Fuller, its general manager, which asserts in relevant part:
 
 
 16
 2. Some time during the last half of 1977 or the first half of 1978, I went to the Spectrum to try to obtain a list of available dates, in order to book musical acts on those dates.
 
 
 17
 3. At the Spectrum, I was told that Larry Magid had it "tied up," that only he "plays there," and that I should "forget it."
 
 
 18
 ....
 
 
 19
 6. My company and I were ready, willing and able to promote and present such groups [listed in p 5] in the Philadelphia-Trenton area. I had money in the bank, houses which were not subject to mortgages and other property which could be used as collateral for financing. There were also people who were able and willing to supply me with financial backing .... My company and I promoted 12 concerts in 1977 ... As a principal of Hollow Moon, a promoter of such concerts, I promoted 7 concerts in 1974 and 11 concerts in 1975 ... and co-promoted 3 concerts in 1975 with EFC, a defendant herein.
 
 
 20
 7. Because of defendants' exclusionary practices, my company was forced out of business after its last concert on November 17, 1977.
 
 
 21
 The portion of the Fuller affidavit dealing with the demand for the Spectrum, the issue on summary judgment, contrasts sharply with the defendants' submissions. It is vague as to the timing and content of the request for access; it does not state that Fuller provided EFC with a definite request or proposal; it fails to state to whom the inquiry was made; and it fails to state for whom the inquiry was made. There is no written evidence to back up Fuller's assertion of a frustrated attempt to lease the Spectrum, and plaintiff makes no assertion that any follow-up effort was made. Fuller's earlier deposition testimony had suggested that the inquiry he made regarding availability of the Spectrum was made by him on behalf of Hollow Moon, an entity unrelated to plaintiff Out Front, and occurred before the beginning of the four-year damage period. App. at 1125a-27a, 1153a-59a.[2] Even if plaintiff could rehabilitate Fuller's own deposition with his subsequent affidavit, an issue we do not reach, that affidavit is insufficient to withstand summary judgment.
 
 
 22
 Fed.R.Civ.P. 56(e) provides, in part, "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." (emphasis added).
 
 
 23
 We have interpreted Rule 56 to signify that "mere formal denials or general allegations which do not show the facts in detail and with precision are insufficient to prevent the award of summary judgment." Robin Construction Co. v. United States, 345 F.2d 610, 613 (3d Cir.1965) (quoting Engl v. Aetna Life Ins. Co., 139 F.2d 469, 473 (2d Cir.1943)). Under this rule, "a party resisting the motion cannot expect to rely merely on bare assertions, conclusory allegations or suspicions." Ness v. Marshall, 660 F.2d 517, 519 (3d Cir.1981) (emphasis added). See Fireman's Insurance Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir.1982). Even accepting Fuller's affidavit assertions as true, they fail to show any serious effort on behalf of Out Front to secure access to the Spectrum during the 1977 to 1981 period.
 
 
 24
 Nor does the record support Out Front's alternative argument, unsupported by any affidavit, that Fuller, an established promoter in Trenton, knew from his past unsuccessful efforts for Hollow Moon that it would have been futile to negotiate for a concert date for the Spectrum. The record is clear that after EFC's contractual exclusive right to the Spectrum ended in December, 1976 and during the damage period, 1977 to 1981, other promoters were in fact given access to the Spectrum. Plaintiff contends that these other promoters were only granted access on highly unfavorable terms, were required to co-promote with EFC, or did not threaten EFC's alleged monopoly over large-scale white-oriented rock concerts. If true, these facts might support viable claims against EFC by the other promoters, but they do not provide the missing link in this plaintiff's proof. In short, there is no probative, objective evidence that plaintiff's intentions vis-a-vis the Spectrum went beyond a pessimistic belief that it was not worth gearing up to use the facility and to compete with Electric Factory. Fuller's affidavit fails to tie defendants' conduct to Out Front's lack of success on its concert venture.
 
 D.
 
 25
 Plaintiff's additional claim, that it was injured because defendants exercised control over performers and agents through unreasonably restrictive contracts, suffers from a similar defect. A jury may find that coercion or control over performers may injure other firms who are unable to use the performers' services. See Danny Kresky Enterprises v. Magid, 716 F.2d 206, 210-12 (3d Cir.1983). However, this plaintiff presented no evidence that it ever sought to contract for the services of any performers covered by the Standard Addendum and that such performers refused to perform for it as a result. In the absence of any such evidence, there is no basis on which plaintiff would be entitled to damages arising from EFC's use of the Standard Addendum.
 
 III.
 
 26
 Because plaintiff failed to establish the existence of a genuine issue of fact that EFC's alleged actions caused it damage, the district court's order granting summary judgment for defendants will be affirmed.
 
 
 
 *
 Hon. Glenn E. Mencer, United States District Court for the Western District of Pennsylvania, sitting by designation
 
 
 [1]
 To the extent that dictum in Lawlor v. National Screen Service Corp., 270 F.2d 146, 154 (3d Cir.1959), cert. denied, 362 U.S. 922, 80 S.Ct. 676, 4 L.Ed.2d 742 (1960), on which the district court relied, suggested that the lack of a demand could be an alternative basis for affirming a district court conclusion that no injury had been sustained by plaintiffs, it has been undermined by the later Supreme Court cases. In any event, in that case there was a general lack of evidence that defendants frustrated what might have been a successful business venture and caused any damage. See id. at 153. The question of the necessity of a demand under section 4 of the Clayton Act was reserved by the court in Weiss v. York Hospital, supra, at 807 n. 32, where it held that a demand was not a prerequisite under section 16. Id. at 807
 
 
 [2]
 15 U.S.C. Sec. 15b establishes a four-year limitation from the date of alleged injury on private claims for damages under Sec. 4 of the Clayton Act. See generally L. Sullivan, Handbook of the Law of Antitrust Sec. 248 (1977). Out Front's suit was filed July 23, 1981