William O'BRIEN and Dorothy O'Brien, Plaintiffs,

v.

McDONALD'S CORPORATION, a Delaware corporation, McDonald's System, Inc., an Illinois corporation, and Franchise Realty Interstate Corporation, an Illinois corporation, Defendants.

No. 68 C 1391.

United States District Court
N. D. Illinois, E. D.

Jan. 15, 1970.

Hamilton Smith and Frank J. Uvena, Chicago, Ill., for plaintiffs; McDermott, Will & Emery, Chicago, Ill., of counsel.

Edwin A. Rothschild, Robert J. Stracks and Bernard J. Nussman, Sonnenschein, Levinson, Carlin, Nath & Rosenthal, Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

ROBSON, District Judge.

The defendants move for summary judgment. For the reasons set forth below, this court is of the opinion that the motion should be granted.

In this diversity action, the plaintiffs charge the defendants with common law fraud. The plaintiffs, William and Dorothy O'Brien, are citizens of Iowa. The defendant McDonald's Corporation is a Delaware corporation. The defendants McDonald's System, Inc. and Franchise Realty Interstate Corporation are Illinois corporations, and both are wholly owned subsidiaries of the defendant McDonald's Corporation. For purposes of this memorandum opinion, the defendants hereinafter shall be referred to collectively as "McDonald's."

The undisputed facts are as follows: In 1955, McDonald's began to promote and develop a chain of franchise drive-in hamburger restaurants throughout the country. From 1955 to 1957, the number of McDonald's franchises increased from 15 to approximately 50. The pleadings indicate that as of 1968, there were in excess of 1,000 McDonald's franchise restaurants. Sales of McDonald's restaurants in 1967 alone exceeded 250 million dollars. Answer, paragraph 5.

In July, 1956, a McDonald's restaurant was opened in Waukegan, Illinois, where the plaintiffs then lived and owned a drugstore. The plaintiff William O'Brien telephoned McDonald's Chicago office and expressed an interest in obtaining a franchise. He was told that there was a waiting list, but that he could come in to the Chicago office for further discussions if he wished.

The next contact between the parties was apparently in April or May of the following year, 1957, when Mr. O'Brien again telephoned and arranged for an appointment at McDonald's Chicago office. Both of the plaintiffs went to Chicago and conferred with Harry Sonneborn and Donald Conley, officers of McDonald's. At that time, the plaintiffs indicated their desire for a McDonald's franchise restaurant to be located in Florida. Sonneborn suggested that an Iowa location would provide a more desirable business venture. The plaintiffs followed the defendants' advice.

The plaintiffs made several trips to Iowa, examined a number of towns, and informed McDonald's that they wished to obtain a franchise to be located in Cedar Rapids, Iowa. In the summer of 1957, the plaintiffs made a $1,500 deposit on the Cedar Rapids franchise. At that time, the defendants did not have a franchise restaurant constructed in Cedar Rapids, nor did they own property for construction of such a restaurant. The plaintiffs allege that they were assured

that the defendants "* * * would use their best efforts to find a suitable site for the first restaurant in Cedar Rapids and that the O'Briens could expect that one would be found soon." Complaint, paragraph 7. From August, 1957, until the spring of 1958, the plaintiffs allege they were repeatedly assured by the defendants that acquisition of a suitable site for a restaurant in Cedar Rapids was imminent. The defendants admit that during this period William O'Brien repeatedly asked Sonneborn and Conley about progress in Cedar Rapids. Defendants' Brief in Support of Motion for Summary Judgment, page 2. Conley informed the plaintiffs "* * * that these real estate transactions were not put together overnight and that they [McDonald's] were still working on Cedar Rapids." Deposition of William O'Brien, page 87.

The plaintiffs admit that in February, 1958, Sonneborn told William O'Brien that the defendants were having difficulty obtaining a suitable site in Cedar Rapids, but that such a site might be available in nearby Iowa City. Deposition of William O'Brien, page 90. In April, 1958, the plaintiffs accepted the Iowa City lease and franchise with the assurance of the defendants that "* * it would have no effect on our chances for Cedar Rapids." Deposition of William O'Brien, page 124. The plaintiffs' Iowa City franchise restaurant opened in August, 1958, and has proven to be a profitable operation.[1] The plaintiffs' deposition testimony, however, indicates that friction developed between the parties over the years concerning matters such as the plaintiffs' alleged delinquency in the payment of suppliers' bills, and the plaintiffs' alleged nonconformance with the defendants' standards of operation.

The plaintiffs' original deposit for the Cedar Rapids franchise was applied to the Iowa City franchise fee. On June 1, 1958, the plaintiffs made another $1,500 deposit on the Cedar Rapids franchise. At that time, the parties executed a document entitled "Preliminary Agreement." The agreement provided in part as follows:

"The Corporation [McDonald's] agrees that it will use its best efforts to procure within ——————— (——) days from the date hereof a site acceptable to it, upon terms acceptable to it, within the general area of *Cedar Rapids, Iowa,* suitable for the construction and operation of a McDonald's Drive-In Restaurant, and will further use its best efforts to arrange to have such site improved with a standard McDonald's Drive-In building."

* * * * * *

"It is expressly understood and agreed that *nothing herein contained shall obligate the Corporation to procure a site or enter into a lease* with the Applicant or the Applicant to enter into a lease with the Corporation and that this agreement may be terminated by either party at any time, the same being executed by both parties for the *sole purpose of evidencing their good faith and their present intention of negotiating a mutually satisfactory lease if a suitable site can be obtained."* Complaint, Exhibit B. (Emphasis supplied.)

In May, 1968, McDonald's obtained a Cedar Rapids site, and offered the franchise therefor to the plaintiffs. The parties failed to agree on terms, and the plaintiffs rejected the defendants' offer. The defendants thereupon refunded the plaintiffs' $1,500 deposit. The plaintiffs

---

1. The plaintiffs admit that their gross sales from the Iowa City McDonald's franchise have been as follows: 1958, $64,401.50; 1959, $182,494.27; 1960, $184,956.29; 1961, $222,834.67; 1962, $242,239.79; 1963, $244,677.02; 1964, $249,308.58; 1965, $278,087.59; 1966, $308,700.61; 1967, $308,149.09; and for the first five months of 1968, $132,473.65. W. O'Brien Deposition, Exhibit 31.

here complain, *inter alia*, that the terms offered in 1968 were not as favorable to them as they would have been in 1958, and that the offer was made in bad faith because the instant litigation was threatened.

The plaintiffs seek actual damages in the amount of $3,000,000, as well as an additional $3,000,000 in punitive damages "by reason of the deliberate misrepresentations" allegedly made by the defendants. The plaintiffs allege that in 1958 they purchased a home in Cedar Rapids in reliance upon the defendants' representations. Claimed as actual damages are "lost income" from the non-materializing Cedar Rapids franchise; daily commuting expenses from their Cedar Rapids home to the Iowa City franchise; and deprivation of an opportunity to invest in competing franchise operations.[2]

## FAILURE TO STATE A CLAIM

 The complaint alleges that Mc-Donald's did not use its *best efforts* to obtain a Cedar Rapids site and, further, that the defendants had no intention of using their best efforts. Rather, it is contended that the defendants intended "all the while to locate a Cedar Rapids site for the O'Briens when it was advantageous and financially convenient for McDonald's System to open a Cedar Rapids franchise." Complaint, paragraph 11. The plaintiffs also complain that since 1958, they have suggested several Cedar Rapids sites, none of which were acceptable to the defendants. However, the plaintiff William O'Brien testified during his deposition that his present belief is that the defendants *used*

*some effort* to obtain a Cedar Rapids franchise:

"Q. Well, all right. I will ask you more specifically. As I understand your testimony now—I want to be fair with you—I think your present belief is that in 1957 there was an attempt to give you a Cedar Rapids location. Your present belief, however, as it regards every year beginning with 1958 through 1966 is that at the time you believed that McDonald's was trying to give you a Cedar Rapids location, but now you have your doubts. Is that correct?

"A. Yes. There were times when we thought they weren't putting forth their best effort, but we felt that they were making some attempt to find one.

"Q. Well, Mr. Smith raised an objection on the meaning of the word 'tried,' which I think becomes apposite now. You say you felt they were not putting forth their best efforts at all times, but you felt, what, that they were trying or putting forth some effort, is that correct?

"A. They were putting forth some effort." Deposition of William O'Brien, pages 416–417.

A total of 782 pages of depositions were taken of the plaintiffs. At these depositions, both plaintiffs testified as to their total recollection of every representation made by the defendants concerning the Cedar Rapids franchise, every action which they took in reliance thereon, every circumstance which to their knowledge indicated the correctness or incorrectness of such representation. Both plaintiffs were given every opportunity to refresh their recollection. In addition, Dorothy O'Brien, who was present during most of William O'Brien's deposition, was asked to review and read all parts of the testimony which may have taken

---

2. Investment in competing franchise operations without McDonald's written consent was specifically prohibited in the *Iowa City franchise agreement*, Com-plaint, Exhibit A, paragraph 11, and has not been shown to be related in any way to the negotiations concerning the Cedar Rapids franchise.

place in her absence. She confirmed its correctness. Deposition of D. O'Brien, pages 203–209. This court finds that the combined testimony of the plaintiffs, viewed in a light most favorable to them for purposes of this motion, fails to show any evidence that the defendants made material misrepresentations of fact on which the plaintiffs reasonably relied to their detriment. Summary judgment is therefore proper, and cannot be defeated by the possibility that the plaintiffs may think of something new to say at trial. *See* Engl v. Aetna Life Insurance Co., 139 F.2d 469, 473 (2nd Cir. 1943). Although in diversity cases state law controls as to substantive elements of the plaintiff's case, the sufficiency of evidence to raise a question of fact is controlled by federal law. Shirey v. Louisville & Nashville Railroad Co., 327 F.2d 549, 552 (5th Cir. 1964). Rule 56(e), Federal Rules of Civil Procedure, requires the party opposing summary judgment to produce enough evidentiary matter to establish a genuine issue of fact for trial. Markwell v. General Tire and Rubber Co., 367 F.2d 748, 750 (7th Cir. 1966). An issue of fact is not "genuine" within the meaning of Rule 56(e) unless it has legal probative force as to controlling issues. Schwartz v. United States, 38 F.R.D. 164, 165 (D.N.D. 1965). Here, the facts and conclusions alleged in the complaint have been pierced by discovery, and therefore the plaintiffs may not rest upon those allegations to perpetuate a nonexistent issue of fact. Shehi v. Southwestern Bell Telephone Co., 382 F.2d 627, 628 (10th Cir. 1967); Thompson v. Evening Star Newspaper Co., 129 U.S.App.D.C. 299, 394 F.2d 774, 777 (1968).

It is therefore ordered that the motion for summary judgment be and it is hereby granted.

It is further ordered that the costs herein be, and they are hereby assessed against the plaintiffs.