James C. Crest, III, Plaintiff-Appellee, *v.* State Farm Mutual Automobile Insurance Company, Defendant-Appellant.

(No. 72-371;

Second District—July 2, 1974.

Querrey, Harrow, Gulanick & Kennedy, of Chicago, for appellant.

Hart, Banbury & Banbury, of Aurora, for appellee.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

This is an action for breach of a contract based upon the refusal of defendant to pay the plaintiff's loss under a collision and public liability policy. The case was tried without a jury and resulted in a judgment for the plaintiff in the amount of $3042.60.

From the judgment of the trial court the defendant appeals on several grounds which will be considered separately.

The main contention of the defendant is that due to a material misrepresentation by the plaintiff in his application for the insurance, the defendant elected to rescind the contract and thus rendered it void *ab initio*.

In order to judge the merits of the defense, a brief review of the facts is necessary. On April 22, 1969, the plaintiff having purchased a new automobile applied to an agent of the defendant, one Sam Lupei, for insurance against liability, for personal injury and property damage and for collision damage to the automobile. The agent prepared a form, designated thereon "automobile application" and the plaintiff signed it after the agent had read it back to him, but plaintiff did not read it. The application contained a question as follows: "Has license to drive or registration been suspended, revoked or refused for the applicant or any member of his household within the past three years?" In the boxes designated "yes" and "no" for answer to this question, the "no" box was marked with an "X".

Actually, the plaintiff had been involved in an accident several years before as a result of which his license to drive had been suspended or revoked as of August 10, 1966. After the application was signed on April 22, 1969, the plaintiff paid the agent $60 as a preliminary payment on the premium and the agent said the application would be binding and would cover for 30 days. On May 16, 1969, the plaintiff collided with a Commonwealth Edison Company utility pole, resulting in damage to his automobile to the extent of $2,224.04 and the destruction of the pole, which cost the plaintiff $418 to replace. The plaintiff reported the

accident to Agent Sam Lupei on the evening of the same day that it occurred. The following day, May 17, the plaintiff received a letter from the defendant's office at Bloomington stating that the defendant had elected to rescind the coverage and return the premium payment of $60 which was in fact returned with the letter. The defendant claims the letter rescinding the coverage was written and mailed before it had any knowledge of the accident.

Subsequently, the plaintiff made claim against the defendant and payment was refused on the ground that the policy had been rescinded by defendant "because of plaintiff's misrepresentation on the application." (We quote from appellant's brief, since the letter of rescission was apparently not made a part of the record.)

While the defendant in its brief adverts to certain general principles it contends are controlling in connection with the rescission of contracts generally (citing an article entitled *"Reformation and Rescission"* by Milton M. Hermann, 1960 U. Ill. L.F. 1) it appears to us that the particular situation before us is governed by the provisions found in the Illinois Insurance Code (Ill. Rev. Stat. 1969, ch. 73, par. 766). This section reads as follows:

> "No misrepresentation or false warranty made by the insured or in his behalf in the negotiation for a policy of insurance, or breach of a condition of such policy shall defeat or avoid the policy or prevent its attaching unless such misrepresentation, false warranty or condition shall have been stated in the policy or endorsement or rider attached thereto, or in the written application therefor, of which a copy is attached to or endorsed on the policy, and made a part thereof. No such misrepresentation or false warranty shall defeat or avoid the policy unless it shall have been made with actual intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company. This section shall not apply to policies of marine or transportation insurance."

The defendant does not seriously contend that the misrepresentation as to the suspension or revocation of plaintiff's driver's license was made with actual intent to deceive. The plaintiff testified that he did not read the application before he signed it and the defendant's attorney did not cross-examine plaintiff as to his knowledge of the misrepresentation or his intent to deceive and, in fact, in his closing argument remarked "apparently there was no intent to deceive." In its affirmative defense the defendant does not allege either an intent to deceive or that a misrepresentation was made which was material to the acceptance of the risk. In the pertinent paragraph stating the basis for the rescission, the affirmative defense refers to the application as providing, "in accordance

with this statute that no coverage is afforded under said policy where there is a misrepresentation regarding suspension of driving privileges within a three year period." However, actually the application does not make this statement but merely says, "If the answer to either question [as to prior cancellation or as to suspension of driver's license within three years] is 'yes' a nonbinding application may be submitted." The affirmative defense pleading is therefore defective both in asserting a positive defense which has no actual basis in the language of the application itself, and because it misquotes the statute it relies on.

The plaintiff served interrogatories on the defendant seeking the answers to certain questions bearing on the materiality of the misrepresentations in question to the acceptance of the risk, but these interrogatories were never answered by the defendant and no evidence as to the materiality of the misrepresentation to the acceptance of the risk was ever put into the record by the defendant.

■■ From the wording of the statute quoted above it is clear that the burden is on the party raising a misrepresentation in a policy or application as a ground for avoidance to establish either that the misrepresentation was made with actual intent to deceive or that it was material to the hazard assumed or to the acceptance of the risk. Likewise, it appears to be the general rule in Illinois that the materiality of the misrepresentation is a question of fact for the jury. (*Mooney v. Underwriters at Lloyd's, London* (1966), 33 Ill.2d 566; *Hofeld v. Nationwide life Insurance Co.* (1972), 7 Ill.App.3d 226; *Downey v. John Alden Life Insurance Co.* (1972), 3 Ill.App.3d 638 (abstract opinion); *Ehret v. Loyal Protective Life Insurance Co.* (1969), 112 Ill.App.2d 289.) In *Mooney v. Lloyd's, London, supra,* our supreme court said, at page 569:

> "The materiality of false representations in an application for insurance is a question of fact for the jury, and a verdict should not be set aside if there is any evidence which, standing alone, tends to support it."

It is true that in the case of *Pruitt v. Allstate Insurance Co.* (1968), 92 Ill.App.2d 236, this court held that a false statement which concealed the fact that another company had cancelled a similar automobile policy was material to the acceptance of the risk as a matter of law. However, that case is distinguishable from the present case on two grounds. First, in the *Pruitt* case the insurance carrier not only raised the materiality of the misrepresentation by way of affirmative defense but also filed a request to admit facts in connection with the application which the plaintiff failed to answer. In addition, the defendant in *Pruitt* filed an affidavit by the division supervisor on underwriting stating that it was the company's policy to declare void *ab initio* any policy in which a false

answer was given in the declaration. *No counter affidavits were filed in response by the plaintiff.* Under these facts the court affirmed a summary judgment for the defendant, saying, at page 239:

"In view of defendant's uncontradicted affidavit, we are of the opinion that the trial court properly granted summary judgment."

This is exactly the opposite to what happened in the case now before us. Here it was the plaintiff who served interrogatories on the defendant seeking information as to the basis for the affirmative defense, and the defendant who utterly failed to respond, even though sanctions were invoked against it. This decisive difference in the state of the pleadings makes the *Pruitt* case inapposite to the case before us.

Moreover, there is a substantial difference between a concealment of prior cancellations and other misrepresentations. The fact of prior cancellation by a previous carrier is an ultimate fact—it establishes that a prior judgment was made by a professional source against the risk. In the case of other misrepresentations there is not the same decisive import against the applicant because no judgment has been made. Certainly the revocation or suspension of a driver's license is a factor to be weighed carefully by the underwriter in deciding whether to continue on the risk. Had the defendant here come forward with positive evidence to show the basis for the affirmative defense such evidence might have been decisive in establishing the materiality of the misrepresentation in inducing the company to accept the risk. But the plaintiff is entitled to know the basis, if one exists, and in this case, the defendant refused or neglected to make any record whatsoever. In oral argument before this court defendant's attorney admitted that the company's rule in connection with a revocation or suspension of a driving license was not an absolute prohibition but gave the underwriter some discretion. It was a factor to be weighed. There is in the record of the plaintiff's testimony a suggestion that his driver's license was suspended by reason of his failure to meet the requirements for financial responsibility. This does not create an automatic judgment that 32 months later the applicant is an absolutely prohibited risk. Facts presented by the underwriter of the company might so establish but that is a burden which the defendant has to meet and in this case it has not met it.

■■ It is our opinion that the materiality of the misrepresentation in this case to the acceptance of the risk was not established as a matter of law and there is no basis for disturbing the judgment of the trial court on this point.

■■ The defendant next contends that the judgment is defective in allowing damages for the cost of repairing the plaintiff's automobile because no evidence as to the cost of such repairs was adduced by the

plaintiff at the trial. It is true that there was no evidence as to the cost of repairs to the automobile in the testimony at the trial. However, the plaintiff served the defendant with a request for admission of facts wherein the plaintiff requested that the defendant admit "that the actual cash value of the collision loss was and is $2,224.04" and the defendant did not reply in any way to this request. Under Supreme Court Rule 216 (c) (Ill. Rev. Stat. 1973, ch. 110A, par. 216(c)) the failure to either deny or object to the requested admission within 28 days of its being served, has the effect of admitting the truth of the fact asserted in the request for admission. We believe the defendant's contention is not well taken in this regard.

The defendant also contends that with regard to the portion of the judgment awarding damages for the cost of replacing the utility pole, the judgment is in error for the reason that the liability of the plaintiff to the third party, Commonwealth Edison, was not proven by any evidence establishing such liability, therefore, the plaintiff is in the position of a mere volunteer.

We fail to see any merit in the suggestion that the plaintiff is a volunteer. The defendant attempted to rescind the policy and denied liability. Under these circumstances the standard prohibition in the policy about the insured recognizing liability and making an independent settlement with the claimant is not binding on the plaintiff. (See *Kinnan v. Charles B. Hurst Co.* (1925), 317 Ill. 251; *Oscar Heineman Corp. v. Standard Surety & Casualty Co.* (1937), 289 Ill.App. 358.) In an annotation in 67 A.L.R. 2d 1084 in discussing this point it is said:

> "Although most of the cases involved not only (as here) an unjustified denial of liability but also a specific refusal to defend an action brought against the insured, the reasoning therein as well as the equitable reasons therefor support the conclusion that by the mere denial of the insurer to its insured of any liability under the insurance policy for the damages claimed by a third person, the insurer forfeits its right to claim the benefits of the 'no action' clause, and the insured policyholder even in the absence of litigation may compromise the claim against him without prejudicing his right to recover from the insurer the amount of a reasonable and good faith settlement made by him."

■■ The above-quoted statement as to the law on this point seems to us to be reasonable and just and to be in line with the Illinois cases. We therefore must reject defendant's contention as to plaintiff being a mere volunteer.

Finally, the defendant objects to the award of attorney's fees of $500 in this case. This portion of the judgment was evidently based on section

155 of the Illinois Insurance Code (Ill. Rev. Stat. 1969, ch. 73, par. 767) which reads as follows:

"In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, if the company has brought suit to cancel the policy or policies or refused upon demand prior to the commencement of the action to pay the amount of the loss, and it appears to the court that such suit or refusal is vexatious and without reasonable cause, the court may allow to the party who by the finding of the court or jury is entitled to prevail against the company, reasonable attorney fees, as a part of the taxable costs in the action and in addition to all other costs, but such allowance shall not exceed any one of the following amounts:

(a) 25% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;

(b) $1,000; * * *."

■■ Considering the facts of this case, we cannot say that the company's refusal to pay was "vexatious and without reasonable cause." The plaintiff's own act in allowing a misrepresentation to be made in his application, even if not with intent to defraud, raised a question as to coverage and the defendant should not be penalized for seeking a judicial determination of the question. We therefore reverse that part of the judgment allowing $500 in attorney's fees.

Accordingly, the judgment of the trial court is affirmed as to the damages to the automobile of $2,224.04 (less the $100 deductible) and to the utility pole in the sum of $418, making the total judgment $2,542.-04 and the judgment is reversed as to the award of $500 for attorney's fees.

Affirmed in part; reversed in part.

T. MORAN, P. J., and SEIDENFELD, J., concur.