## AUTOMOTIVE WHOLESALERS OF ILLINOIS, Plaintiff–Counterdefendant,

v.

## NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Defendant–Counterplaintiff.

### No. 79 C 0035.

United States District Court, N. D. Illinois, E. D.

Nov. 26, 1980.

---

Donald W. Jenkins, Fedder, Price, Kaufman & Kammholz, Chicago, Ill., for plaintiff counterdefendant.

Nancy Schaefer, Victor G. Savikas, John W. Morrison, Karon, Morrison & Savikas, Ltd., Chicago, Ill., for defendant–counterplaintiff.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Automotive Wholesalers of Illinois ("AWOI") filed this diversity action seeking a declaration that a directors and officers liability and corporate reimbursement policy issued to AWOI by defendant National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union"), is valid and effective according to its terms. AWOI also seeks recovery of its attorneys' fees on the ground that National Union's denial of coverage was vexatious and unreasonable within the meaning of section 767 of the Illinois Insurance Code, Ill.Rev.Stat. ch. 73, § 767.[1] National Union

---

1. Ill.Rev.Stat. ch. 73, § 767 (1977) provides:
   In any action by or against a company wherein there is in issue the liability of a

company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a

answered and counterclaimed for a declaratory judgment that the policy was void *ab initio* on two main grounds: (1) that AWOI made material misrepresentations and submitted misleading information in its application to National Union; and (2) that AWOI failed to disclose, in response to a direct question in the application form, that its officers and directors had knowledge of potential claims against themselves or acts that could give rise to a potential claim at the time the application for liability insurance was filed with National Union.

Presently pending before the Court is National Union's motion for partial summary judgment on the issue of its alleged vexatious and unreasonable denial of coverage.[2] In the alternative, National Union moves for a separate trial on that issue. AWOI opposes the motion for summary judgment on the grounds that the undisputed facts indicate that National Union's denial of coverage was vexatious and unreasonable, and that in any event, the motion is premature since AWOI has not yet completed its discovery on the issue and because the appropriate time to consider the question is after a trial on the merits of the question as to the validity of the policy. AWOI further argues that the issue of the validity of the policy and National Union's alleged unreasonable denial of coverage are inextricably intertwined so that separate trial of the issues is unwarranted.

The material facts of this case, to the extent they are undisputed, are relatively straightforward. In April, 1975, AWOI submitted to National Union its application for directors and officers liability and corporate reimbursement insurance listing the name of the applicant organization as "Automotive Wholesalers of Illinois and Affiliates." While AWOI is a not–for–profit trade association engaged in promoting and developing a cooperative relationship between various members of the automotive service industry,[3] it has two for–profit wholly–owned subsidiaries. AWOI Service Corporation is in the business of advertising, business counselling, and credit investigation for members of AWOI and Automotive Acceptance Corporation purchases and accepts assignments of accounts receivable and performs other collection services for AWOI members. The officers and directors of AWOI also serve the two for–profit subsidiaries in the same capacity and on a voluntary basis. Although AWOI disclosed the existence of its two subsidiaries in answer to question 10 of the application which requested a "list of all subsidiary corporations, associations, and fraternities," the re-

claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as a part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:
 (a) 25% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;
 (b) $5,000;
 (c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.
 (2) Where there are several policies insuring the same insured against the same loss whether issued by the same or by different companies, the court may fix the amount of the allowance so that the total attorney fees on account of one loss shall not be increased by reason of the fact that the insured brings separate suits on such policies.

2. National Union maintains that if it would have been apprised of what it now believes to have been the true state of affairs at the time the application was filed, it would have issued a policy, if it issued one at all, on substantially different terms. Since National Union contends that AWOI's alleged misrepresentations and nondisclosures materially affected the risk accepted and hazard assumed by the company, it argues that it was perfectly justified in declaring the policy void pursuant to Ill.Rev.Stat. ch. 73, § 766. Therefore, National Union maintains that its denial of coverage was not vexatious and unreasonable within the meaning of Ill.Rev.Stat. ch. 73, § 767.

3. AWOI's by–laws state that AWOI's corporate objectives are encouraging high ethical business standards, studying economic problems, and developing a close bond of good fellowship and sportsmanship among its members.

mainder of the application was completed solely with respect to AWOI.[4]

In response to question 1(c), AWOI stated that "Automotive Wholesalers of Illinois and Affiliates," the applicant organization, was chartered or incorporated as a "not-for-profit corp." In response to question 6 of the application requesting the applicant to "attach copies of latest annual report and balance sheet," AWOI submitted a one-page balance sheet for "Automotive Wholesalers of Illinois" showing total assets of $246,586. When Gail Hulford, an underwriter for National Union, requested a copy of AWOI's latest certified annual report, AWOI sent the same one-page balance sheet back again, this time with the handwritten notation at the bottom of the page: "5-20-75 The Above Figures Are True And Correct. H. L. Bellmer Executive Vice President." Upon receipt of the one-page balance sheet in response to her request for the latest annual report, Ms. Hulford assumed that AWOI, like other not-for-profit corporations with assets of about $250,000 with which she had dealt, did not have a certified annual report. (Affidavit of Gail Hulford attached to National Union's memorandum in support of partial summary judgment).[5] Finally, the application stated that no director or officer of the applicant had "knowledge or information of any act, error or omission which might give rise to a claim under the proposed policy." (Answer to question 15 of the application). The application was signed by Arthur Koratsky,

AWOI staff attorney, under a boldface clause reading, "The undersigned authorized officer of the organization declares that to the best of his knowledge the statements set forth herein are true."

National Union issued a policy to AWOI on July 8, 1975. In October, 1975, AWOI gave notice of a potential claim under the policy. It seems that unknown to National Union, AWOI's executive vice-president and director Harry Bellmer had invested AWOI funds, and persuaded others to invest, in a corporation controlled by himself and members of his family. The corporation became insolvent in early 1975. The potential claimants under the National Union policy were investors in Bellmer's corporation asserting that AWOI's directors and officers were liable under federal and state securities laws for their losses. At the time it received the notice of potential claim, National Union also received from AWOI's attorneys a copy of AWOI's 1974 certified annual report which AWOI had earlier refused or failed to submit[6] to Ms. Hulford in connection with the application for insurance. The 1974 certified annual report revealed that the combined assets of AWOI and its two for-profit subsidiaries were $3,073,371 and that AWOI's assets alone may have been as large as $726,006 rather than the reported $246,586.[7] The annual report also described the for-profit activities of the two subsidiaries and indicated that AWOI operated a health and welfare fund for the benefit of its members. In

4. At this point in the application, AWOI did not designate its subsidiaries as "not-for-profit" or "for-profit." The only other reference to the for-profit subsidiaries in the application materials occurred in AWOI's balance sheet which listed AWOI's holdings of 55,000 common shares of AWOI Service Corporation and Automotive Acceptance Corporation under the "Investments" sub-heading.

5. In her affidavit, Ms. Hulford states that, "When I received AWOI's application ... I noted that the application stated that it was on behalf of 'AWOI and Affiliates' and described them as 'not for profit corp.' and I believed that AWOI and its affiliates were not-for-profit corporations."

6. AWOI, of course, maintains that it did not refuse to submit its annual report, but that

National Union waived its request for the report when it accepted the balance sheet with Bellmer's indorsement. On the other hand, National Union maintains that AWOI refused to send the 1974 certified annual report that was in its possession at the time the application was filed because it would have cast a different light on the status of the applicant.

7. AWOI does not dispute the fact that its two for-profit subsidiaries, combined with those of the not-for-profit AWOI, had assets in excess of $3,000,000. It maintains, however, that the $726,006 figure is erroneous because it includes the assets of the Health and Welfare Fund, a trust in which AWOI and several individuals apparently have interests.

December, 1975, National Union declared the policy void *ab initio* on the ground that the material submitted at the time the policy was written was totally misleading as to both the objects and scope of the proposed insured, AWOI and affiliates, in light of the new information submitted to National Union. The insurer returned AWOI's premium and upon AWOI's refusal to accept the returned premium, has kept it in an escrow account for AWOI's benefit.

In 1978, AWOI and twelve of its directors and officers were sued by the investors in Bellmer's corporations. Upon receipt of the complaint from AWOI's attorneys, who requested that National Union undertake AWOI's defense pursuant to the directors and officers liability policy, National Union discovered that during 1972 and 1973 AWOI had engaged in some investment advising and counselling activities by promoting to its members investments in Bellmer's corporations. National Union then informed AWOI that this constituted further support for its decision declaring the policy void at its inception. Finally, in the course of discovery in the action now pending before this Court, National Union maintains that it has substantiated the allegations made in its counterclaim that AWOI falsely stated in its application for insurance that none of its officers or directors knew of claims or potential claims against themselves because Arthur Koratsky, who signed the application as an "authorized officer" of AWOI and its affiliates, allegedly knew of the investment of AWOI funds in the Bellmer corporations and other activities that could give rise to potential liability. National Union also maintains that the minutes of AWOI board of directors meetings in June, 1975, which were obtained through discovery in the instant case, indicate that other AWOI officers and directors knew of potential liability as a result of Bellmer's business dealings before the policy was issued in July, 1975.

AWOI's version of the facts does not differ substantially from National Union's except that AWOI maintains that its answers to the questions in the application were technically correct and that National Union is now attempting to thrust upon AWOI the consequences of its own deficient application form and its negligent review of the information provided with the application. AWOI argues that the application was designed to elicit information about only one entity and thus AWOI only submitted information on itself and not its for-profit subsidiaries. According to AWOI, if National Union needed information about the subsidiaries, it should have requested it when AWOI disclosed the existence of the subsidiaries on the face of the application. Furthermore, AWOI asserts that National Union waived[8] its request for a certified annual report when it accepted a copy of AWOI's balance sheet bearing H.L. Bellmer's indorsement that the figures stated therein were true and correct. AWOI also notes that since the balance sheet discloses AWOI's holdings of 55,000 common shares of the two subsidiaries listed in the application, and since Illinois not-for-profit corporations are prohibited from issuing common stock by Ill.Rev.Stat. ch. 32, § 163a25, National Union was put on notice that the subsidiaries were for-profit entities with potentially greater assets than AWOI itself.

Finally, AWOI disputes National Union's contention that it has substantiated its allegations that AWOI officers and directors knew of potential claims at the time the application was filed and did not disclose their knowledge in response to a direct question on the application. First, AWOI points out that staff attorney Arthur Koratsky who is alleged to have had such knowledge is not technically an officer or director of AWOI. However, National Union argues that he should be considered an officer of AWOI for these purposes since he signed the application on the line designated for an "authorized officer" of the applicant organization. Secondly, AWOI argues that neither Koratsky nor anyone else could have reasonably inferred from knowledge that AWOI loaned funds to Bellmer's com-

---

**8.** AWOI cites no authority for its waiver theory, however.

panies that officers or directors of AWOI might be subject to liability down the proverbial road.

The foregoing discussion notwithstanding, it is clear that AWOI submitted an application for directors and officers liability insurance on behalf of its not–for–profit self and its for–profit affiliates without clearly delineating the difference between the entities. Avoiding for the moment the question of whose fault it is that such information did not come to light before the application was approved,[9] the fact remains that National Union was unaware of the true state of affairs when it issued the policy.[10] Furthermore, whether or not AWOI's directors or officers did in fact know of potential claims arising from Bellmer's self–dealing (of which they were aware at least as of the June, 1975, board meeting when the board discussed Bellmer's activities), National Union may have been justifiably suspicious when it was notified of a potential claim arising out of such self–dealing approximately three months after the issuance of the policy. Although disputed material facts exist as to whether the policy was correctly declared void *ab initio* or whether it is still valid according to its terms, the question for decision today is the narrower one of whether there is a dispute as to a genuine issue of fact material to a judgment that as a matter of law

National Union's denial of coverage was not vexatious or unreasonable. If we find that there is no such dispute as to material facts and that no such dispute would arise no matter what AWOI might find in further discovery directed at National Union, National Union would be entitled to judgment as a matter of law.

■ The question of whether an insurer has acted vexatiously or unreasonably in processing a claim is for the court to decide in the exercise of its discretion. *Howard Foundry Co. v. Hartford Fire Insurance Co.*, 222 F.2d 767, 770 (7th Cir. 1955). Illinois courts have said that no single factor is determinative as to whether attorneys' fees should be assessed against an insurer pursuant to section 767 of the Illinois Insurance Code, Ill.Rev.Stat. ch. 73, § 767. "Rather, the totality of the circumstances, taken in broad focus, will determine the matter." *Deverman v. Country Mutual Insurance Co.*, 56 Ill.App.3d 122, 14 Ill.Dec. 94, 96, 371 N.E.2d 1147, 1149 (4th Dist. 1977); *Crest v. State Farm Mutual Automobile Insurance Co.*, 20 Ill.App.3d 382, 313 N.E.2d 679, 684 (2d Dist. 1974). Attorneys' fees are not to be awarded simply because an insurer is unsuccessful in supporting its position in subsequent litigation. *Zak v. Fidelity–Phenix Insurance Co.*, 34 Ill.2d 438, 216 N.E.2d

9. AWOI contends that an applicant for insurance need only disclose such facts as are responsive to the questions asked. *Bowman v. Zenith Life Insurance Co.*, 67 Ill.App.3d 393, 24 Ill.Dec. 82, 84, 384 N.E.2d 949, 951 (1st Dist. 1978). On the other hand, National Union maintains that an insurance company is entitled to assume that an insured's statements were made in good faith and the company need not go behind them. *Stone v. Those Certain Underwriters at Lloyds*, 81 Ill.App.3d 333, 36 Ill.Dec. 781, 401 N.E.2d 622 (5th Dist. 1980). Of course, these positions are not mutually exclusive. It should be noted, however, that none of the cases cited by the parties on this point involve the question of the award of attorneys' fees for the vexatious and unreasonable denial of coverage.

10. National Union maintains that if it had been aware of the true state of affairs at the time the application was filed and under consideration it would have issued a policy, if at all, on substantially different terms. In an affidavit at-

tached to National Union's brief in support of partial summary judgment, Gail Hulford, National Union's underwriter, stated that:

> To my knowledge, at the time AWOI submitted its application, the company charged lower premiums and imposed lower self–insured retentions (deductibles) for not–for–profit corporations as opposed to for–profit corporations. Further, the amount of the premium and retention depended upon the size of the not–for–profit corporation. If National Union had known the true facts of AWOI's and its affiliates' size and operations, it would have issued a policy, if at all, upon entirely different conditions.

Affidavit at 4. Ms. Hulford further stated that if she "had known that AWOI's affiliates were for–profit corporations with assets in excess of $2,000,000, I would not have issued the indications letter because underwriting decisions about for–profit corporations were made in the New York office." *Id.*

113, 116 (1966), and a court should look very critically at a request for attorneys' fees in a case where a substantial question as to coverage is raised. In *Crest v. State Farm Mutual Automobile Insurance Co., supra,* for example, the court noted that "[t]he plaintiff's own act in allowing a misrepresentation to be made in his application, even if not with intent to defraud, raised a question as to coverage and the defendant should not be penalized for seeking a judicial determination of the question." 313 N.E.2d at 684.[11]

■ The United States Court of Appeals for the Seventh Circuit as well as the lower federal courts in this district have routinely denied the award of attorneys' fees under the Illinois statute where there is a factual dispute as to the fact or amount of coverage or the amount of loss. *See e. g., Weiner v. 222 East Chestnut Street Corp.,* 303 F.2d 630, 636 (7th Cir. 1962); *Bremen State Bank v. Hartford Accident & Indemnity Co.,* 427 F.2d 425, 428 n.2 (7th Cir. 1970); *Illinois Produce International, Inc. v. Reliance Insurance Co.,* 388 F.Supp. 29, 36 (N.D.Ill.1975); *Stern, Walter & Simmons, Inc. v. Seaboard Surety Co.,* 308 F.Supp. 252, 254–55 (N.D.Ill.1970). The insurer is not required to prevail in subsequent litigation in order to escape payment of the insured's attorneys' fees and it is neither vexatious nor unreasonable to deny a claim upon grounds that are later held to be erroneous or unacceptable. Thus, in *Bremen State Bank, supra,* the court said that "[t]o hold against coverage in this case would fly in the face of the intention of the parties," 427 F.2d at 425, but the court still denied the successful plaintiff its attorneys' fees. Moreover, in *Stern, Walter & Simmons, Inc., supra,* the court rejected the defendant insurer's construction of the policy in issue in that case on the ground that if the insurer's construction were defended it "would never be required to defend or indemnify the plaintiff for liability arising out of the hazards enumerated in the policy." 308 F.Supp. at 254. The court refused to find that the insurer had acted in bad faith, however, and thus denied the request for attorneys' fees. With these principles in mind, we now turn to the question of summary judgment in the case at bar on the issue of whether, as a matter of law, National Union can be said to have not acted vexatiously or unreasonably in denying coverage of AWOI's claim.[12]

In support of a motion for summary judgment, the moving party has the burden of showing that there is no dispute as to any genuine issue of fact material to a judgment in his favor as a matter of law. *Cedillo v. International Association of Bridge & Structural Iron Workers, Local Union No. 1,* 603 F.2d 7, 10 (7th Cir. 1979); *Fitzsimmons v. Best,* 528 F.2d 692, 694 (7th Cir. 1976). The non–moving party is entitled to all reasonable inferences that can be made in its favor from the evidence in the record, *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Moutoux v. Gulling Auto Electric,* 295 F.2d 573, 576 (7th Cir. 1961), and as a general rule, questions of motive and intent have been held to be particularly inap-

11. In *Crest,* the plaintiff had falsely stated that he had not had his license suspended or revoked within the last three years in filling out an application for automobile insurance. The trial court held that since the defendant insurer had not shown that the misrepresentation was material to the risk assumed, but rather that the prior suspension was only one of several factors the insurer weighed in issuing a policy, the denial of coverage was erroneous. The appellate court reversed the trial court's grant of attorneys' fees, however, because "[c]onsidering the facts of this case, we cannot say that the company's refusal to pay was 'vexatious and without reasonable cause.' " 313 N.E.2d at 684.

12. AWOI also maintains that it might be entitled to attorneys' fees under the Declaratory Judgment Act, 28 U.S.C. § 2202. The standards for such relief under section 2202 are essentially the same as those under section 767 of the Illinois Insurance Code with respect to the bad faith of the party against whom the award is made. To this extent, the following discussion is equally applicable to AWOI's argument based on the Declaratory Judgment Act. *But see Broyles v. Commercial Union Insurance Co. of New York,* 287 F.Supp. 942, 952–53 (W.D.Ark.1968), in which the court said that section 2202 does not authorize the award of attorneys' fees to an insured although the law of Arkansas did allow such an award.

propriate for disposition on a motion for summary judgment. *Conrad v. Delta Air Lines, Inc.*, 494 F.2d 914, 918 (7th Cir. 1974); *Moutoux v. Gulling Auto Electric, supra.* While the non–moving party is entitled to all reasonable inferences in its favor, it may not merely rely on the allegations in its pleadings but rather must affirmatively set forth specific facts in affidavits or otherwise showing that there are issues that must be decided at trial in response to the moving party's assertions that no genuine material issues of fact exist. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289–90, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968); *Kirk v. Home Indemnity Co.*, 431 F.2d 554, 560 (7th Cir. 1970). The non–moving party, however, cannot create an issue of material fact through conjecture or speculation as to what evidence might be adduced at trial or what might be turned up by further discovery. *Abiodun v. Martin Oil Service, Inc.*, 475 F.2d 142, 144 (7th Cir.), *cert. denied*, 414 U.S. 866, 94 S.Ct. 57, 38 L.Ed.2d 86 (1973); *Kirk v. Home Indemnity Co., supra; O'Brien v. McDonald's Corp.*, 48 F.R.D. 370, 373–74 (N.D.Ill.1970); 6 Moore's Federal Practice ¶ 56.17 (2d ed. 1966).

■ AWOI's strongest argument in opposition to National Union's motion for summary judgment is that the motion is premature because AWOI has not yet completed its discovery on the issue. AWOI maintains that the proper time to consider the propriety of awarding attorneys' fees is "in light of the totality of the circumstances of the case, including the evidence, or lack thereof, at trial." Plaintiff's Brief at 7. However, the facts of this case as they now stand in the light most favorable to AWOI as the non–moving party show, at the very least, a genuine issue as to the fact of coverage and validity of the policy. Even if this Court were to find, on the merits of the underlying suit and counterclaim for declaratory relief, that the AWOI officers and directors had no knowledge of potential claims or acts giving rise to such claims against them when the application was filed and that AWOI did not submit misrepresentative or misleading information in connection with its application, it still could not be said that National Union took a vexatious and unreasonable position in the instant case. Moreover, AWOI has not alluded to any information it expects to uncover in further discovery on this issue that would change the clear import of the facts known to date, short of an admission by National Union that it acted in bad faith. AWOI has not filed any affidavits in response to National Union's affidavits nor has it materially disputed what National Union says were its impressions at the time it declared the policy void *ab initio.* Given the totality of the facts and circumstances in this case, AWOI's bare hope or suspicion that it will uncover something to show that National Union acted vexatiously or unreasonably is insufficient to defeat a motion for summary judgment. As the court said in *Mintz v. Mather's Fund, Inc.*, 463 F.2d 495, 498 (7th Cir. 1972), "courts should not look the other way to ignore the existence of the genuine issues of material fact but neither should they strain to find the existence of such genuine issues where none exist." *See also Kirk v. Home Indemnity Co.*, 431 F.2d 554, 562 (7th Cir. 1970) ("[s]urmise and suspicion does not rise to the dignity of a genuine issue as to material fact."); *Abiodun v. Martin Oil Service, Inc.*, 475 F.2d 142, 144 (7th Cir. 1973) (speculative nature of plaintiff's assertion that further discovery would develop genuine issues of material fact, in light of plaintiff's other delays in completing discovery, did not defeat summary judgment).

■ AWOI also argues that whether National Union acted vexatiously or unreasonably in denying coverage in essentially a question of motivation or intent that is ill suited to determination on a motion for summary judgment. It is apparent from an examination of the Illinois and federal cases cited to this Court by the parties, however, that the award of attorneys' fees under section 767 of the Illinois Insurance Code depends less upon the question of subjective motive or intent that has prevented courts from granting summary judgment in other contexts than on a more objective view of

the totality of facts and circumstances in a particular case in ascertaining whether the insurance company's actions can be considered vexatious or unreasonable as a matter of law. In any event, AWOI's speculation as to National Union's evil or malicious intent in declaring the policy void and denying coverage is inappropriate in this context without support in the record, in affidavits, or in other documents filed with the Court. *Kirk v. Home Indemnity Co., supra,* 431 F.2d at 562. Accordingly, National Union's motion for partial summary judgment is granted.[13] It is therefore unnecessary to address the alternative motion for a separate trial. It is so ordered.

---

13. To the extent that AWOI is concerned that partial summary judgment at this stage of the proceedings might leave any vexatious or unreasonable behavior by National Union at trial unpunished, National Union has suggested that this Court reserve the right to assess attorneys' fees after trial should it appear to be warranted. Such an approach seems equitable and would adequately protect AWOI. Accordingly, this Court reserves the right to reconsider this question after trial.